HALLOWELL NATIONAL BANK

*vs.*

DANIEL E. MARSTON, and others.

Kennebec.     Opinion June 5, 1893.

*Promissory Notes. Indorser. Protest. Estoppel. Waiver. R. S., c. 32, § 10.*

A statutory provision, that the waiver of demand and notice by an indorser of a promissory note to be valid must be in writing, may be waived by the indorser under such facts and circumstances as will estop him from denying that the note was not duly protested for non-payment.

The principle of equitable estoppel has been incorporated into the law, and is constantly administered in courts of law in the same manner as those of equity, for the purpose not of compelling parties to do right in their dealings but of preventing them from doing wrong.

An indorser of a note residing in this State, where it had been discounted, requested the plaintiff, the holder, who had transmitted it through the usual bank channels for collection or protest in Brooklyn, N. Y., where it was payable, to recall it to save expense of protest,— the indorser having learned that the maker had failed and that his prior indorser, a citizen of Brooklyn, had agreed to meet the note with cash and a new note. The holder assented on condition that the new note should bear the names of all the local indorsers. Three days before maturity the indorser withdrew his request, upon being asked by his prior indorser to have the note forwarded for protest. The holder under the direction of the indorser undertook by telegraph to order the note forward not knowing where it was; but on the day of maturity it came back to the holder's residence and too late for protest.

As the indorser's conduct was designed to have the holder recall the note before maturity and hence without protest, and the holder was thereby induced to recall it, whereby under the circumstances it was put beyond the power of the holder by the most feasible and expeditious mode possible to have the note protested, after the indorser had withdrawn his request, *Held;* That the indorser is equitably estopped to assert any right under R. S., c. 32, § 10, requiring waiver of demand and notice to be in writing.

ON REPORT.

This was an action against three defendants, Fuller, Marston

and McClench, residents of Hallowell, as indorsers of a promissory note payable at Brooklyn, New York, and discounted by the plaintiff bank at Hallowell, in this State.

The note was not presented for payment at the place of payment, Mechanics' Bank, Brooklyn, or notice of its non-payment given to the defendants as indorsers. The plaintiff sought, however, notwithstanding the want of protest and the statute of this State requiring a waiver of demand and notice to be in writing duly signed, etc., to hold the defendant, Fuller, upon the ground of an equitable estoppel arising from his acts which are stated in the opinion.

The declaration alleges due demand and notice in the usual form.

The case is stated in the opinion.

*Baker, Baker and Cornish,* for plaintiff.

Before the statute : *Gove* v. *Vining,* 7 Met. 212, 214 ; *Leffingwell* v. *White,* 1 Johns. Cas. 99, S. C. 1 Am. Dec. 97, note ; *Marshall* v. *Mitchell,* 35 Maine, 224 ; 2 Dan. Neg. Ins. § § 1102-5 ; *Kent* v. *Warner,* 12 Allen, 563 ; *Thomas* v. *Mayo,* 56 Maine, 41 and cases ; *Mead* v. *Small,* 2 Maine, 207 ; *Patterson* v. *Vose,* 43, Maine, 560.

Equitable estoppel where promises have been acted upon : *Fleming* v. *Gilbert,* 3 Johns. 528 ; Browne Stat. Frauds, § 436 ; (Waiver) *Hickman* v. *Haynes,* 10 L. R. C. P. 600 ; Herm. Estop. § 825 ; *Randon* v. *Tobey,* 11 Howe 493 ; *Gardiner* v. *Gerrish,* 23 Maine, 47 ; *Webber,* v. *Williams College,* 23 Pick. 302. Other exceptions to Stat. Frauds : *Montacute* v. *Maxwell,* Finch Prec. Ch. 528 ; Browne Stat. Frauds, § § 443, 444 ; *Glass* v. *Hulbert,* 102 Mass. 38, 39, 40 ; *Cookes* v. *Mascall,* 2 Vern. 200 ; Sto. Eq. § 761 ; *Green* v. *Jones,* 76 Maine, 563 ; *Mestaer* v. *Gillespie,* 11 Ves. 638 ; 2 Pom. Eq. § 867, note ; *Gilpatrick* v. *Glidden,* 81 Maine, 150.

Contract made in New York, to be there performed, governed by laws of that state. Bigelow Cont. § 1375 ; *Denny* v. *Williams,* 5 Allen, 1 ; *Scudder* v. *Bank,* 91 U. S. 406. Defendant's acts equivalent to protest of note in New York. *Spencer* v. *Harvey,* 17 Wend. 490 ; *Leffingwell* v. *White,* 1 Johns. Cas.

99; *Crain* v. *Colwell*, 8 Johns. 384; *Agan* v. *McManus*, 11 Johns. 180; *Savage* v. *Bevier*, 12 How. Pr. 166.

*Heath and Tuell*, for defendants. ·

Note not protested through fault of bank. Defendants not liable because of want of protest or a written waiver. R. S., c. 32, § 10; *Hall* v. *Flanders*, 83 Maine, 242.

Plaintiff, by his pleadings, must prove demand and notice. Until then defendant need not move. No waiver, that Fuller made efforts to procure payment of the note. *Hussey* v. *Freeman*, 10 Mass. 84. Insolvency of maker does not excuse demand and notice. *Granite Bank* v. *Ayers*, 16 Pick. 394, and cases. Reliance on local indorsers no excuse for non-protest. *Davis* v. *Gowen*, 19 Maine, 447. At common law defendants' acts must amount to a waiver. *Boyd* v. *Bank*, 32 Ohio St. 526, S. C. 30 Am. Rep. 624; *Seldner* v. *Bank*, 66 Md. 488, S. C. 59 Am. Rep. 190; *Gove* v. *Vining*, 7 Met. 212. Proof must show Fuller intended to relinquish his rights. *Kent* v. *Warner*, 12 Allen, 563; *Pratt* v. *Chase*, 122 Mass. 265. Elements of estoppel wanting. Big. Estop. p. 437. Fuller made no statement of fact not known to Bank. He made no promise. A promise can never raise an estoppel. *White* v. *Ashton*, 51 N. Y. 280. That the letter had reference only to future contingencies is fatal to an estoppel. *Langdon* v. *Doud*, 10 Allen, 433. So of a promise acted on by promisee and not performed by promisor. *Brightman·* v. *Hicks*, 108 Mass. 246. No fraud, necessary to create estoppel by conduct. Big. Estop. § 467. No one deceived. Plaintiff must legally make out a *prima facia* case before an estoppel against Fuller can operate; that it fails to do before defendant is called on to say anything. Plaintiff might easily have had note protested had it been vigilant. Bank had full knowledge of all facts known to Fuller, and acted on their own judgment as to their safety in trusting to Howell's letter and promises. Bank officers knew the law and should not have ignored the statute.

Contract of indorsement to be performed in Maine. *Hunt* v. *Standart*, 15 Ind. 33, S. C. 77 Am. Dec. 84; 27 Am. Dec. 137, and note, S. C. *Aymar* v. *Sheldon*, 12 Wend. 439; *Cullum*

v. *Casey*, 9 Porter, 131, S. C. 33 Am. Dec. 304; *Allen* v. *Bank*, 22 Wend. 215, S. C. 34 Am. Dec. 289, note p. 317; *Carter* v. *Bank*, 7 Humph. 548, S. C. 46 Am. Dec. 89; *Rose* v. *Park Bank*, 20 Ind. 94, S. C. 83 Am. Dec. 306; *Freese* v. *Brownell*, 35 N. J. 285, S. C. 10 Am. Rep. 239; Big. Bills and Notes, p. 342 and cases; Edw. Bills, p. 185; Sto. Conf. Laws, § 360; Redf. and Big. L. C. p. 712; Rand. Com. Paper, § 38; Dan. Neg. Ins. § § 911, 912.

VIRGIN, J.  Assumpsit against the defendants as indorsers of a promissory note.

Undisputed facts.  The plaintiff held the Kennebec Maine Ice Company's note for $2500 bearing the personal indorsement of the defendant Fuller, who was its treasurer, and of the other defendants, its directors.  The note was overdue and the defendants' liability had become fixed prior to November 1, 1890.

The Kennebec Maine Ice Company held the note of the Ridgewood Ice Company for $2808.05, dated at Brooklyn, N. Y., September 12, 1890, payable in three months, at Mechanics' Bank, Brooklyn, to the order of John Clark who indorsed it "to G. S. Fuller, Treas. Ken. Me. Ice Co." It was also indorsed by Monroe Howell, of New York.

On November 1, 1890, at the solicitation of the defendant, Fuller, the plaintiff accepted the latter note for the former, on the express condition that the defendants,— on whom the plaintiff informed them it would rely,— would personally indorse it as they had the others.  Thereupon the latter note was indorsed and the plaintiff paid to Fuller the difference of the amounts of the respective notes and delivered up to Fuller his company's note as paid.

On December 6,— nine days prior to the last day of grace of the note in suit,— the plaintiff, in accordance with the usual course of business among banks, sent the note to its bank correspondent in Boston, for collection or protest.  By the usual course of business the plaintiff's Boston correspondent would forward the note to its New York correspondent, which

in turn would transmit it to its Brooklyn correspondent, which would cause it to be collected or at maturity protested if unpaid. By such a well-known business transaction among banks, each in turn only knows its own predecessor and principal, whose directions alone it receives and recognizes.

On December 1, 1890, Howell (Fuller's antecedent indorser) wrote to "Fuller, Treas. Ken. Me. Ice Co." saying : "You hold a note of the Ridgewood Ice Co. with my indorsement. . . . The company has failed and of course it falls upon me to pay the note . . . It would be almost impossible for me to raise the full amount of the note by the 15th" [last day of grace]. "I propose to pay you $1000 in cash then, or after the note is protested, and give you a note of Howell Bros. with my indorsement for the balance in four months."

One week after the date of that letter, viz., on December 8, Fuller called at the plaintiff's bank, informed the cashier of Howell's letter, and requested the recall of the note without protest and the plaintiff's assent to accept part payment and renewal of the balance with the defendants as indorsers.

The cashier informed Fuller that he would recall the note without protest " if he wished it." Fuller replied—"I have no doubt the money will be forthcoming." Cashier rejoined—"I will do just as you say about it." Fuller then said—"I would say recall it without protest to save expense and bother of it." Thereupon the cashier wrote to the plaintiff's Boston correspondent to procure the return of the note without protest, and the plaintiff assented to the proposition of Fuller to accept $1000 in part payment of the note and a renewal for the balance with the defendants as indorsers.

On the morning of December 12, three days before maturity, Fuller came to the bank again and requested the note to be turned back for protest, because of a telegram from Howell to that effect. The cashier replied that he did not know where the note then was ; and it was doubtful if it could be seasonably got back to Brooklyn as it would go through three banks each of which would probably require a day. Fuller then asked the cashier "if he could not telegraph to his correspondent and have

the note sent back to New York;" the cashier replied he would try it; and he immediately (at 9.30, A. M.,) sent the telegram according to the suggestion of Fuller. But instead of the note going again to Brooklyn, it turned up in Hallowell on Monday morning, December 15,— the last day of grace, too late to reach Brooklyn in season for protest.

The plaintiff now seeks to hold Fuller as indorser.

Fuller, notwithstanding his conduct in the premises, interposes the statutory provision: "No waiver of demand or notice by an indorser of a promissory note is valid, unless it is in writing signed by him or his lawful agent." R. S., c. 32, § 10.

A statutory, or even a constitutional provision, made for one's benefit is not so sacred that he may not waive it, and having once waived it he is estopped from thereafter claiming it. *Mitchell* v. *Dockray*, 63 Maine, 82; *Marshall* v. *Perkins*, 72 Maine, 343; *In re Application of Cooper*, 93 N. Y. 507, 512, and cases.

In answer to the statutory defense, the plaintiff invokes the application of the principle of estoppel. Not that ancient legal species, confined within certain narrow iron rules, to be strictly construed, applicable to but a few cases and which shut out not only the truth but also the equity and justice of the individual case and was rightfully denominated "odious," Co. Lit. 352 *a*; *Lyon* v. *Reed*, 13 M. & W. 309; *Horn* v. *Cole*, 51 N. H. 289; but of the more modern species, borrowed originally from equity and hence denominated equitable estoppel; which while it shuts out the truth, never fails to uphold the justice of each case to which it is applicable; whose circumstances, like those involving absolute fraud, are of such infinite variety that, its application cannot be confined within the limits of any technical definition or formula which exclude all cases not within its terms; but like other equitable doctrines it is entitled to a fair and liberal application for the promotion of honesty and fair dealing. *Gilpatrick* v. *Glidden*, 81 Maine, 137, 150; *Canal Co.* v. *Hathaway*, 8 Wend. 483; *Strong* v. *Ellsworth*, 26 Vt. 366, 373; *Preston* v. *Mann*, 25 Conn. 118; *Horn* v. *Cole*, *supra*. The principle has been incorporated into the law and is con-

stantly administered in courts of law in the same manner as in those of equity, for the purpose not of compelling parties to do right in their dealings but of preventing them from doing wrong. *Titus* v. *Morse*, 40 Maine, 348, 352; *Bigelow* v. *Foss*, 59 Maine, 164; *Fernald* v. *Palmer*, 83 Maine, 244; *Martin* v. *Me. C. R. R. Co.* 83 Maine, 100; *Horn* v. *Cole, supra.*

While no fixed formula can include all cases, still there are certain general rules which aid in the examination of cases. In the case last above cited, Perley, C. J., said : "Equitable estoppels prevent a party from asserting his rights under a general technical rule of law, when he has so conducted himself that it would be contrary to equity and good conscience for him to allege and prove the truth."

The "conduct" of a party in its broad sense of words, acts, silence or negative omission to do anything, is an important factor in this class of estoppels, whose foundation is justice and good conscience. "Its object," said Prof. Pomeroy, "is to prevent the unconscientious and inequitable assertion of enforcement of claims or rights which might have existed or been enforced by other rules of law, unless prevented by estoppel; and its practical effect is, from motives of equity and fair dealing, to create and vest opposing rights in the party who obtains the benefit of the estoppel." 2 Pom. Eq. § 802.

To render conduct such as will make the assertion of the truth inequitable and unconscientious, it must at least be calculated to induce another to act in a particular manner which he otherwise would not have done — such that he was thereby induced to, and did in fact change his course or situation for the worse. *Titus* v. *Morse, supra*; *Allen* v. *Goodnow*, 71 Maine, 420; *Caswell* v. *Fuller*, 77 Maine, 105; *Tower* v. *Haslam*, 84 Maine, 86, 90.

Do the facts of this case bring it within the application of equitable estoppel; and shall the defendant Fuller, notwithstanding his conduct in the premises, be heard to say that the note in suit was not in truth and in fact protested?

We are of opinion that the former question should be answered in the affirmative and the latter in the negative.

As seen, nine days before its maturity, the note was started by the bank holder through the usual channel adopted by banks for such business, on its way to its place of payment for collection or protest.

As the maker had become insolvent, the note would undoubtedly have been protested and the liability of Fuller as indorser fixed, if it had not been ordered to be recalled through the defendant Fuller's instrumentality before maturity.

It would not have been thus recalled on the plaintiff's own motion, because protest was necessary,— unless waived,— in order to hold the local indorsers on whom, as they were informed at the time of their indorsement, the plaintiff relied for payment of the note.

It was recalled before maturity and hence without protest, solely by reason of the positive interposition and special request of Fuller.

The circumstances attending the order for recall are worthy of notice. After the request was made but before it was complied with, the plaintiff's cashier said to Fuller —"I will do just as you say about it"— thereby placing upon Fuller the entire responsibility of his own decision and of whatever might result from a compliance with it. Thereupon Fuller deliberately and formally took upon himself the burden of that responsibility when he peremptorily replied : "I say recall it, because I have not any doubt that the papers will be here all right."

Fuller's final determination to assume the responsibility was confessedly inspired by his undoubted reliance upon the personal assurance contained in the letter of Howell,— his antecedent indorser,— that he would pay the $1000 at maturity and renew the balance. Having that confidence, his direction of the recall was not wanting in business sagacity; for from his point of view, he could see his own liability, which in the absence of a recall was about to become absolute, on a New York note against an insolvent ice company, diminished by $1000 at least. On the other hand, the plaintiff had no private object or inclination to take that course. It was amply secured not only by the defendant's indorsement, but by that of the two other local

indorsers of substance. Its only incentive for following the direction of Fuller was a willingness to accommodate one of its customers in his effort to aid himself, although by so doing it took the risk of losing all claim upon the other two local indorsers.

Obviously the plaintiff's course or situation was changed for the worse solely by reason of the voluntary conduct of Fuller, which was expressly designed to bring about that change. It was in no wise induced by any promise that Howell made in his letter, of December 1, to Fuller. That promise induced Fuller's conduct, but not the bank's action. As already seen, the bank's security was ample, and it merely "assented" to the proposition of accepting $1000 cash when the note matured and a renewal for the balance if indorsed by these three defendants.

It matters not that, when he directed the recall of the note, Fuller acted in good faith and entertained no fraudulent or deceitful purpose or design whatever. Because, if the consequences of his conduct would result in an inequitable and unconscientious injury to the plaintiff, provided Fuller were now allowed to set up the want of demand and notice, it is within the well-established principles of equitable estoppel. Herm. Est. § 321; 2 Beach Mod. Eq. § 1095; 2 Pom. Eq. § 803 *et seq*, and notes.

That the most unjust and inequitable results will follow Fuller's successful assertion of his attempted statutory defense, is seen in the fact that the plaintiff's only claim for the payment of the note will be against the insolvent corporation without indorsers.

It is suggested that the plaintiff did not use proper diligence in its effort to have the note sent the second time for protest.

The note was due December, 12–15. On the former date, after the note had been out of the plaintiff's possession six days for the purpose of being protested, Fuller, instigated by Howell's telegram to "have the note protested," called again at the bank, and at that late day, countermanded his previous direction for a recall and requested the plaintiff to send the note to Brooklyn for protest. On the cashier's informing him that he did not

know where the note then was, and that as the time was so limited, "it was doubtful if it could be got to Brooklyn in season," Fuller (as he himself testified), "asked the cashier if he could not telegraph his correspondent and have the note sent back to New York, and the cashier said he would try it." Accordingly, a telegram was immediately (9.30 A. M.,) written and sent. Thus the most expeditious mode possible was adopted at Fuller's own suggestion but without success.

Do these facts relieve Fuller from the responsibility which he assumed in the outset by recalling the note without protest "to save expense and bother?" Not if there is any efficacy in the old equitable doctrine that, "when one of two persons guiltless of intentional moral wrong must suffer a loss, it must be borne by him, who by his conduct has made the injury possible."

To be sure, the note was the property *pro hac* of the plaintiff and no other party had the right without the plaintiff's consent to do or require what was done in relation to it. So Fuller was a party to it, and his conditional liability was rapidly ripening into an absolute liability, and he in turn become owner. All his conduct was directed against the happening of so undesirable a result, and the bank was executing both in letter and spirit his express behests. For, at his special interposition and direction, orders had started through the legitimate channel for business of that character, for the recall. He and not the bank was to reap whatever advantage might result from such action. Before his behest had been fully accomplished, and while the note was somewhere not known to the parties, in transit between Brooklyn and Hallowell, 300 miles distant, he interposed again in order to protect his own interest, and requested that the note be intercepted, again turned back to Brooklyn and protested; and the only feasible and best possible mode, suggested by Fuller, was promptly resorted to.

It cannot be gainsaid that, although the plaintiff was the lawful holder of the note and it could take any action therewith it saw fit, nevertheless in everything that was done, after the note was, on December 6, started toward Brooklyn for protest, the

plaintiff acted in behalf of one of its customers, whose liability of becoming owner of the note, by being compelled to pay it, was so imminent that he was really directing and the bank implicitly following and carrying out as his agent whatever action he deemed necessary to save himself.

As the other defendants, Marston and McClench, took no part in recalling the note, they have done nothing to estop themselves from interposing the statute in their defense. But as Fuller's conduct was designed to have the bank recall the note before maturity and hence without protest, and the bank was thereby induced to, and did recall it, whereby under the circumstances it was put beyond the power of the plaintiff, by the most feasible and expeditious mode possible to have the note protested after December 12, we think Fuller is equitably estopped to assert any right under R. S., c. 32, § 10.

> *Judgment against defendant Fuller for the amount due on the note. Judgment for Marston and McClench.*

PETERS, C. J., WALTON, LIBBEY and FOSTER, JJ., concurred.