PEOPLE, PLAINTIFF AND APPELLEE, v. LÓPEZ,
DEFENDANT AND APPELLANT.

APPEAL from the District Court of San Juan in
*Quo Warranto* Proceedings.

No. 2296.—Decided July 19, 1921.

QUO WARRANTO — CERTIORARI — REMOVAL OF MUNICIPAL OFFICERS. — When the question is whether or not a member of the council of administration elected by a municipal assembly should be removed because of his disqualification to hold the office the proper proceeding is that of *quo warranto* established by the Act of March 1, 1902, and not that of certiorari referred to in section 65 of the Municipal Law.

ID.—ID.—ID.—IMMORAL CONDUCT.—A mayor who had been removed from office for the commission of clearly immoral acts is incapacitated, in accordance with sections 33 and 34 of the Municipal Law, to hold the office of commissioner of public service, police and prisons, although the order of removal stated that the mayor was removed for "highly improper" conduct.

The facts are stated in the opinion.

*Mr. M. F. Rossy* for the appellant.

*The Attorney General* and *Messrs. Suliveras* and *Lastra Charriez* for the appellee.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

This is a *quo warranto* proceeding brought in the District Court of San Juan, Section 1, on the relation of Ramón Salgado and with the consent of the Attorney General, to recover a judgment to the effect that Pedro López is unlawfully holding the office of Commissioner of Public Service of the Municipality of Dorado, to which he was appointed by the municipal council of that municipality on October 29, 1919, the relator, Ramón Salgado, a member of the said municipal council, voting against the appointment.

The complaint, dated November 5, 1919, alleges, among other things, the following:

"That the said Pedro López holds and discharges the said office unlawfully and in open conflict with sections 17, 33 and 34 of Act No. 85 of the Legislative Assembly of Porto Rico of July 31, 1919,

entitled 'An Act establishing a system of local government and re-organizing municipal services.'

"That the said illegality is shown by the following:

"When the said Pedro López was appointed Commissioner of Public Service of the Municipality of Dorado, P. R., and took possession thereof on November 1, 1919, he had not, and still has not, the qualifications required by the said sections 17, 33 and 34 of the said Act, because the said López was lawfully and duly removed on January 25, 1916, by the then Acting Governor of Porto Rico, Hon. Martín Travieso, Jr., from the office of Mayor of Dorado which the said López held at that time, the removal and the grounds therefor appearing from the following official documents:

" 'Government of Porto Rico.—Office of the Executive Secretary. —San Juan, January 8, 1916.—Sir:—Complying with the instructions of the Acting Governor, I have the honor to inform you that from an investigation recently made by Jaime Sifre, Special *Fiscal,* the very grave charge is made against you that, instigated by you as mayor of that municipality and for the purpose of procuring the suspension of certain repairs that were being made by several property owners on the rural road of Sardinera of that municipality, four councilmen and the secretary of the council falsified the public records by making it appear therein that on November 1, 1915, the council approved an ordinance forbidding the making of repairs on the roads of the municipality without first obtaining the authorization of the mayor, when in fact the council held no session on the said 1st day of November. The said ordinance was prepared after that date and the councilmen signed the minutes of the supposed session also after that date, separately and at different times, and at no time did they meet according to law to discuss and approve the said ordinance. And that, in prosecuting criminally several property owners on November 15, 1915, for violating the said ordinance, you submitted to the justice of the peace a document which purported to be a certified copy of the ordinance when you knew that that document had no legal force because the ordinance had never been approved according to law. Before the Acting Governor takes final action in the matter, this letter is addressed to you in order to give you an opportunity to present in writing whatever you may consider proper in your defense, accompanied by such evidence as you may desire to submit to the Acting Governor. The Acting Governor will await your defense until the 15th day of this month and after that date he will take final action, whether or not you may have taken

advantage of the opportunity hereby offered you.—Respectfully, R. Siaca Pacheco, Acting Executive Secretary of Porto Rico.—To Pedro López, Suspended Mayor, Dorado, P. R.'

" 'Government House, P. R., San Juan, January 25, 1916.—Sir: —I have read the communication addressed by you on the 11th instant to the Acting Secretary of Porto Rico in defense of the charges made against you in compliance with my instructions in a letter addressed to you on the 8th instant by the said official. After duly considering the justifications made by you in your said communication, the evidence obtained in the investigation made by the Special *Fiscal* at Large and the report made to me by the Attorney General in the matter, I am fully convinced that the truth of the acts with which you have been charged is sufficiently proved. These acts are the more serious in so far as you are concerned in them, because you were the chief executive of that municipality upon whom the law imposes the obligation to see that the other municipal officials and employees properly discharge their duties. I therefore consider your conduct as a public official in this case highly improper, and, consequently, in the exercise of the powers conferred upon me by the Municipal Law, I hereby remove you from the office of Mayor of the Municipality of Dorado, the effectiveness of this removal to be antedated to the time when you ceased in the discharge of the duties of the said office by reason of your suspension ordered by the Governor on December 4, 1915. A copy of this letter and also a copy of the letter addressed to you by the Secretary of Porto Rico on the 8th instant will be filed in the office of the Secretary in accordance with the law.—Respectfully, Martín Travieso, Jr., Acting Governor.—To Pedro López, Dorado, P. R.' "

In answering the complaint the defendant admitted the statement of charges and the order of the Acting Governor, but denied that he was unlawfully holding the office of Commissioner of Public Service, Police and Prisons, to which he was appointed, and averred that he possessed all of the qualifications required by sections 17 and 34 of the Municipal Law for holding the office, because his removal by Acting Governor Travieso on January 25, 1916, from the office of Mayor of Dorado was based on the fact that his conduct had been highly improper, but it was not classified as immoral.

After the trial the court entered judgment on January 30, 1920, declaring that Pedro López had no right to hold the office of Commissioner of Public Service of Dorado, and, consequently, ordering that he be removed therefrom, the marshal being directed to demand from the defendant the immediate possession of the said office from which he was removed and the Municipal Assembly of Dorado to consider him as removed for all legal purposes, with the costs and attorney fees against the defendant.

From that judgment Pedro López appealed to this court and filed a brief in support of his appeal, alleging that not *quo warranto,* but certiorari, is the proper proceeding in this case, and that the Governor's order of January 25, 1916, removing him from the office of Mayor of Dorado for highly improper conduct did not disqualify him for the office of Commissioner of Public Service of the said municipality, to which he was appointed by the municipal council on October 29, 1919.

We are of the opinion that the *quo warranto* proceeding is the proper proceeding for the purposes of the relator.

Section 65 of the Municipal Law, Act No. 85 of July 31, 1919, under the caption "Judicial Remedies," reads as follows:

"That on motion of the aggrieved party the courts of justice shall have jurisdiction—

"(*a*) To annul or review by writ of *certiorari* any legislative or administrative act of the municipal assembly, council of administration or commissioners, which infringes the constitutional rights of the complainant or which is contrary to the Organic Act or the laws of Porto Rico;

"(*b*) To stay by injunction the execution of any ordinance, act, resolution or order which infringes rights guaranteed by the Constitution or insular laws;

"(*c*) To compel by writ of *mandamus* a compliance with ministerial duties by municipal officials;

"(*d*) To grant, by ordinary suit, compensation for damages, to

parties injured by acts or omissions of municipal officials through malice or inexcusable negligence or ignorance.''

As may be seen, subdivision (*a*) of section 65 grants recourse to a writ of certiorari to annul or review any legislative or administrative act of the municipal assembly, council of administration or commissioners which infringes the constitutional rights of the complainant or which is contrary to the Organic Act or the laws of Porto Rico, and subdivisions (*b*), (*c*) and (*d*) prescribe for other cases the writs of injunction and mandamus and ordinary actions. The election of a commissioner is not a legislative or administrative act in the proper sense of the words and the wording of subdivision (*a*) shows that it was not framed with the election of commissioners in mind, but for cases of the commission of certain acts impairing constitutional rights or violating the Organic Act or the laws of Porto Rico. The question here is whether or not Pedro López should be removed from the office of Commissioner of Public Service, Police and Prisons of Dorado because of his legal disqualification to hold the office, and the proper remedy in such a case is clearly that of *quo warranto* established by the Act of March 1, 1902, which was not expressly or impliedly repealed by the said Municipal Law.

As regards the disqualification of Pedro López, alleged as a cause for his removal, the pertinent part of Section 33 of the Municipal Law provides as follows:

''That public-service commissioners shall have the following qualifications:

''1. Be residents of the municipality for two or more years;

''2. Be real property taxpayers or possess a professional title or an eighth-grade diploma, or have discharged the duties of the office of mayor or councilman for four or more years;

''3. Know how to read and write the Spanish language and be of good moral conduct.''

Section 34 of the same law provides that members of the

council of administration, of which, according to section 29, the commissioner of public service shall be a member, shall have the same qualifications as members of the municipal assembly, except as regards residence and electoral qualifications.

Section 17 of the Act reads as follows:

"That to be eligible as a delegate to the municipal assembly it shall be required: to be a citizen of the United States; over twenty-one years of age; a qualified voter of the municipality; to have resided in the municipality for a period of not less than one year; to know how to read and write; not to have served sentence for a felony or for a crime involving moral turpitude, nor have been removed from any public office for delinquency or immoral conduct."

There is no doubt that defendant Pedro López would be disqualified for the office of Commissioner of Public Service of the Municipality of Dorado if the *highly improper conduct* for which he was previously removed as mayor of the said municipality is equivalent to immoral conduct.

As we said in the case of *People* v. *Ways, ante,* page 311, according to the Dictionary of the Spanish Royal Academy, *conduct* means, among other things "deportment, or the manner in which men govern their lives or regulate their actions." And "the 'conduct' of a party, in its broad sense," as said in *Hallowell National Bank* v. *Marston et al.,* 27 Atl. 529, cited in 2 Words & Phrases Judicially Defined, 1416, "consists of acts, words, silence, or negative omission to do anything." Moral is that which pertains to or is related to morality; that which concerns human customs and actions with regard to their licitness or illicitness. Therefore the moral conduct of a person will be good or bad according to whether or not it is adjusted to the dictates of morality in the order of licitness or illicitness. The conduct of Pedro López was highly improper, according to the decision of the Governor of Porto Rico of January 25, 1916, in committing the acts which caused his removal as Mayor of the Munici-

pality of Dorado. We understand that although all improper conduct may not be immoral, that of Pedro López deserves that classification in the circumstances of the case.

In the Governor's decision of January 25, 1916, the conduct of Pedro López was considered to be highly improper because the Governor was fully convinced that the truth of the acts with which he was charged was sufficiently proved. These acts were that as Mayor of the Municipality of Dorado and for the purpose of procuring the suspension of certain repairs which were being made by several property owners on the rural road of Sardinera of the municipality, López induced four councilmen and the secretary of the council to make it appear in the public records that an ordinance had been approved by the council on November 1, 1915, forbidding the making of repairs on the roads of the municipality without first obtaining the authorization of the mayor, when in fact the said ordinance was prepared after that date and signed by the councilmen separately and at different times, without meeting at any time in the manner provided by law to discuss and approve the ordinance, and that López brought criminal actions on the 15th of November before the justice of the peace against several property owners for violations of the said ordinance, knowing that the same had no legal force. From the facts set forth in the orders of the Governor of the 8th and 25th of January, 1916, it clearly appears that several property owners began to make repairs on the rural road of Sardinera when there was no ordinance forbidding their doing so, and that in order to prosecute them as having violated a municipal ordinance, the said ordinance was thereafter prepared and signed at the instigation of Pedro López. His conduct in acting as he did was not only highly improper, but also immoral, as purporting to penalize certain acts which were not penalized prior to the preparation and signing of the ordinance.

Such conduct was not adjusted to the dictates of morality.

Besides, it should be taken into account that when the Governor ordered the removal of López on January 25, 1916, the Municipal Law of March 8, 1906, was in force, section 35 of which, in so far as pertinent, reads as follows:

"In case an alcalde is unable through physical disability to properly perform the duties of his office, or in case he misconducts himself, or is disqualified for any other legal cause, he shall be removed from office by the Governor after having been given an opportunity to be heard in his own defense. A statement of the reason for such removal shall be filed by the Governor in the office of the Secretary of Porto Rico, and shall be made a matter of public record. The decision of the Governor shall be final. *   *   * "

We must presume that the Governor's order was made in accordance with that statute and, therefore, that the highly improper conduct of Pedro López referred to was equivalent to misconduct, which, not being adjusted, as we have said, to the dictates of morality, should be classified as immoral, considering the facts on which the order of removal was based.

The appellant also alleges in support of the appeal that errors of procedure were committed by the court below in compelling him to file all of his pleadings at the same time, but we shall not consider them because he was not deprived of any substantial right in his defense and no prejudice was done to him.

The judgment appealed from must be

*Affirmed.*

Justices Wolf, Del Toro, Aldrey and Hutchison concurred.