2004 ME 146

**Bryan BELL**

v.

**Chad WALTON.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Oct. 6, 2004.

Decided: Nov. 30, 2004.

David C. King, Wendy A. Brown, Rudman & Winchell, Bangor, for plaintiff.

Eugene C. Coughlin, Vafiades, Brountas & Kominsky, L.L.P., Bangor, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] Chad Walton appeals from a judgment entered in the Superior Court (Penobscot County, *Mead, J.*) finding that strict compliance with the written notice requirement of 31 M.R.S.A. § 692(3) (1996) was necessary to effectuate Bryan Bell's voluntary withdrawal from their limited liability company, Bangor Metal Works,

LLC. The court determined that Bell remained a fully vested member/manager of the company and was entitled to an equal distribution of the profits upon its ordered dissolution. Walton argues that strict compliance with the statutory written notice requirement is not necessary to effectuate a member's voluntary withdrawal from a limited liability company. We disagree and affirm the judgment.

## I. BACKGROUND

[¶ 2] Walton and Bell founded Bangor Metal Works in April 2000. Each had a fifty percent ownership interest and each was a manager. Walton and Bell soon began to disagree as to how the company should be operated. After several months of discord, Bell discontinued his full-time employment with the company in September 2001.

[¶ 3] Title 31 M.R.S.A. § 692(3) prescribes that a member may voluntarily withdraw from a limited liability company by giving thirty days' written notice to the other members, unless the operating agreement or articles of organization provide otherwise. Bangor Metal Works's articles of organization did not address a member's right to withdraw, and there was no operating agreement in place. Thus, the statutory default rule controlled. Bell never tendered written notice of withdrawal.

[¶ 4] Bell and Walton attempted to negotiate a buyout of Bell's interest in the company but could not agree on a price. In March 2002, based on his suspicion that Walton was not properly accounting for all funds received by the company, Bell requested Walton's consent to bring a derivative suit against him on behalf of the company to determine whether Walton had violated his fiduciary duties. Walton denied any impropriety and asserted that Bell had terminated his interest in the company as of September 2001.

[¶ 5] Bell filed a complaint alleging, inter alia, that Walton had breached his fiduciary duties. Walton countered that Bell voluntarily relinquished his position in and abandoned his duties with the company in September 2001, and asserted that Bell's interest in the company should be valued as of that time.

[¶ 6] Following a bench trial, the court concluded that because "[t]he creation of a limited liability company and the investment of its members and managers are procedures governed strictly by statute[,] ... a member or manager cannot withdraw except by following the procedures established by statute." Because Bell never tendered written notice of withdrawal, the court found that he remained a fully vested member of the company. Further, finding that Walton's actions during the buyout negotiations violated 31 M.R.S.A. §§ 652 and 657 (1996 & Supp.2003),[1] the court ordered the dissolution of the company and an equal distribution of the profits. This appeal followed.

## II. DISCUSSION

▪ [¶ 7] The question presented is one of first impression: whether strict compliance with the statutory written notice requirement is necessary to effectuate a member's voluntary withdrawal from a limited liability company. *See* 31 M.R.S.A.

---

1. Title 31 M.R.S.A. § 652 (1996 & Supp.2003) imposes duties of good faith and accountability on members and managers of a limited liability company. Title 31 M.R.S.A. § 657 (1996) provides that "[a] member or manager of a limited liability company is fully protect-ed in relying in good faith upon the records of the limited liability company and upon the information, opinions, reports or statements presented to the limited liability company by any of its other managers [or] members ....''

§ 692(3). The interpretation of a statute presents a question of law that we review de novo. *State v. Shepley,* 2003 ME 70, ¶ 9, 822 A.2d 1147, 1150. For the reasons that follow, we hold that strict compliance with the statutory written notice requirement is necessary to effectuate a member's voluntary withdrawal from a limited liability company.

[¶ 8] Walton asserts that because the written notice requirement solely benefits those entitled to receive the notice, those members can waive the requirement. We disagree. An examination of section 692(3) in the context of the Maine Limited Liability Company Act[2] as a whole reveals that the written notice requirement benefits all members.

[¶ 9] In the event of a withdrawal, the notice requirement ensures that the remaining members have the opportunity to *notify creditors that the withdrawing* member can no longer bind the company. *See* 31 M.R.S.A. §§ 641, 693, 694 (1996 & Supp. 2003). In a case such as this one, in which it is disputed whether there has been a withdrawal, the notice requirement also protects members against false or unfounded claims of withdrawal. A false or unfounded claim that a member had withdrawn could improperly deprive that member of his or her rights to any distribution, threaten usurpation of the member's management powers, and deprive the member of the fiduciary duties owed by other members. *See* 31 M.R.S.A. §§ 651, 652, 672 (1996 & Supp. 2003). Moreover, the written notice requirement leaves room for members to attempt to resolve informally any differences they may have before resorting to the formal withdrawal process. The opportunity for informal resolution would be at risk if members could unilaterally deem another member to have withdrawn.

[¶ 10] While it may be appropriate to permit one to waive a right that is exclusively for his or her benefit, it is not appropriate to permit that person to waive a right that also benefits another. *See Seider v. Bd. of Exam'rs of Psychologists,* 1998 ME 78, ¶ 5, 710 A.2d 890, 892 (noting that statutorily required notice must be given mandatory effect if the rights of interested parties would be prejudiced absent such notice); *Hallowell Nat'l Bank v. Marston,* 85 Me. 488, 493, 27 A. 529, 530 (1893) ("A statutory, or even a constitutional provision, made for one's benefit is not so sacred that he may not waive it, and having once waived it he is estopped from thereafter claiming it.").

[¶ 11] The written notice requirement provides a bright line by which members of limited liability companies can easily determine the status of their responsibilities toward one another. Mindful that section 692(3) is unambiguous, and that the limited liability company is a creature of statute, there is no apparent reason to engraft a judicially created doctrine—i.e., constructive notice of withdrawal—upon the statutory scheme. *See Am. Mut. Ins. Cos. v. Murray,* 420 A.2d 251, 252 (Me. 1980) ("In the absence of an express legislative command or a clear indication of legislative intention, we leave the parties where the legislature left them.").

[¶ 12] Here, the court properly concluded that Bell had not voluntarily withdrawn from Bangor Metal Works because the bright line afforded by section 692(3)'s written notice requirement had not been crossed.[3]

---

2. 31 M.R.S.A. §§ 601–762 (1996 & Supp. 2003).

3. Because we hold that strict compliance with the statutory written notice requirement was necessary to effectuate Bell's withdrawal from

The entry is:

Judgment affirmed.

Bangor Metal Works, we need not address the parties' arguments as to whether (1) Bell's conduct was sufficient to evidence a withdrawal, and (2) Walton waived his right to notice.