STATE OF MAINE
KENNEBEC, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-10-43

WELCH OIL COMPANY,
Petitioner

v.

ORDER ON RULE 80C APPEAL

STATE TAX ASSESSOR,
Respondent

Before the Court is an action by Petitioner Welch Oil Company pursuant to M.R. Civ. P. 80C and 36 M.R.S.A. § 151[1] for a *de novo* review of the State Tax Assessor's reconsideration decision regarding the assessment made against it in the amount of $3,749.75, plus interest, for a total of $4,170.08. The parties have submitted a joint stipulation of agreed-upon facts in lieu of trial.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner here is Welch Oil Company, LLC ("the LLC"), which is a Maine limited liability company located in York Harbor, Maine. (Jt. Stip. ¶ 1.) On or about July 21, 2008, James and Janet Welch, who are husband and wife, formed the LLC with their son, Jeffrey

---

[1] The State Tax Assessor's decision on reconsideration constitutes final agency action subject to review by the Superior Court in accordance with the Maine Administrative Procedures Act, except for sections 11006 and 11007. 36 M.R.S.A. § 151 (2011). Therefore, the Superior Court's review is not confined to the record before the agency, and is not limited in the scope of review.

1

Welch. (Jt. Stip. ¶¶ 2-3.) The LLC is in the business of selling and delivering home heating oil. (Jt. Stip. ¶ 4.)

On or about April 30, 2007, before the LLC officially existed, James purchased a 2008 Peterbilt 336 motor vehicle ("the Vehicle") under the name "James F. Welch, d/b/a Welch Oil" (Jt. Stip. ¶ 5), and used it for approximately fifteen months to make heating oil deliveries. (Jt. Stip. ¶ 6.) On or about August 19, 2008, James transferred the Vehicle to the LLC pursuant to a casual sale. (Jt. Stip. ¶ 7.) The LLC paid no Maine Sales or Use Tax on the sale. (Jt. Stip. ¶ 8.) In a Maine Use Tax Certificate dated August 19, 2008, James claimed he owned no use tax because he owned 51% of the LLC. (Jt. Stip. ¶ 12.)

In relevant part, the tax provision upon which James relied provides that a use tax must be imposed on all casual sales of motor vehicles *except* those sold to a limited liability company *"when the seller is the owner of a majority . . . of the ownership interests in the . . . limited liability company . . . ."* 36 M.R.S.A. § 1764 (emphasis added). It is under the umbrella of § 1764 that James proffers he was the owner of the Vehicle, that he transferred the Vehicle to the LLC of which he was a majority owner, and that the transfer should be immune to taxation because the exemption in § 1764 directly applies. (Pet.'s Br. 7.)

On or about September 23, 2009, the tax assessor ("the Assessor") issued a letter determining that the § 1764 exemption did not apply to the transfer, and assessed a Maine Use Tax of $3,749.75, plus interest, for a total of $4,170.08. (Jt. Stip. ¶ 9; Pet. for Review Pursuant to M.R. Civ. P. 80C and 5 M.R.S.A. § 11001.) In response, the LLC sought timely reconsideration under 36 M.R.S.A. § 151, and on August 2, 2010, the Assessor denied the request. (Jt. Stip. ¶¶ 10-11.) The Assessor reasoned in its decision that James was not the

2

majority owner of the LLC. (Stip. Exhibit J.) That decision represents the final agency decision here, and it is this decision for which the LLC timely filed its Rule 80C appeal.

The Assessor asserts that James, in fact, did not own a majority interest in the LLC such that he would be exempt form the use tax under § 1764.[2] The Assessor points to certain contradictions in documents submitted by the parties. The LLC's operating agreement, dated August 1, 2006, indicates that James and Janet together "as joint tenants" own a 51% interest in the LLC, while Jeffrey owns 49%. (Jt. Stip. ¶ 13.) Moreover, the LLC's 2008 federal Tax Return for Partnership Income, as well as a related Schedule K-1 form, lists James and Janet as joint tenants with a 51% interest. (Jt. Stip. ¶¶ 16-17.)

However, a 2008 Maine Information Return (Form 1065ME/1120S-ME, with schedules) for the LLC lists the division of profit for 2008 among James, Janet and Jeffrey as: James and Janet (together) received 5.99%, and Jeffrey received 94.01%. (Jt. Stip. ¶ 15.) Additionally, the LLC's Maine Revenue Services and Department of Labor Application for Tax Registration form ("the MRS/DOL Registration"), dated August 1, 2008, lists James as owning 26%, Janet as owning 26%, and Jeffrey as owning 49%.[3] (Jt. Stip. ¶ 21.) Further, James wrote a letter to Governor Paul LePage, dated April 21, 2011. In that letter he wrote: "[a]t this time we set up the LLC with my son, owning 49%, my wife 25%, and myself 26%. Therefore I have control of 51% with my wife." (Jt. Stip. ¶ 24.)

---

[2] Parties do not dispute that the use tax applies to the casual sale unless the exemption applies. 36 M.R.S.A. § 1861. The amount of the tax is also not in dispute.
[3] The LLC's 2009 Form 1065ME/1120S-ME, with schedules, lists the division of profits for that year as: James and Janet (together) received 28.757%, and Jeffrey received 71.243%. (Jt. Stip. ¶ 18.)

It is undisputed that the LLC has never issued any shares, securities, bonds, debentures, or any instruments or documentations reflecting the ownership division stated in the operating agreement. (Jt. Stip. ¶ 14.)

The LLC in its briefs, requests a finding in its favor and a determination that the LLC is exempt for the Agency's tax assessment. Additionally, the LLC asks the Court to award its costs in defense, including reasonable attorney's fees. However, in the absence of statutory authority to award counsel fees (and Petitioner cites to no such authority) the Court cannot order such an award, even if Petitioner is the prevailing party.

## STANDARD OF REVIEW

This is an appeal of a final agency action under M.R. Civ. P. 80C, but because of its special nature as an appeal from the State Tax Assessor under 36 M.R.S.A. § 151, the Court does not follow the usual 80C standard of review of agency action. Instead, under § 151, the Court is instructed to "conduct a de novo hearing and make a de novo determination of the merits of the case." 36 M.R.S.A. § 151. "The court shall make its own determination as to all questions of fact or law . . . ." *Id.*

## DISCUSSION

As stated, the LLC brings this action to determine whether the Assessor improperly denied the LLC's claim for a Maine Use Tax exemption under 36 M.R.S.A. § 1764. Such a determination hinges on two primary issues. First, as a matter of law, were James and Janet Welch joint tenants with respect to the 51% interest between them? And, if they were in fact joint tenants, can James individually qualify as a majority owner for purposes of § 1764? The

4

court finds in favor of the Petitioner on both issues; James and Janet Welch qualify as joint tenants with regard to the 51% interest, and as a joint tenant, James individually qualifies as a majority owner under § 1764. Below, the issue of the existence of a joint tenancy is addressed first.

I.    *Joint Tenancy*

In Maine, under the common law rule, a joint tenancy arises only if the four unities of time, title, interest, and possession coincide. *See Strout v. Burgess*, 144 Me. 263, 268, 68 A.2d 241, 247 (1949). This means "each tenant must have received the same interest, at the same time, conveyed by the same instrument giving each owner the right to full possession of the property." *See Milliken v. First National Bank of Pittfield*, 290 A.2d 889, 890 (Me. 1972). Additionally, intent to create a joint tenancy must be shown by clear and convincing evidence. *See Palmer v. Flint*, 161 A.2d 837, 842 (Me. 1960).

The LLC argues, and the Court agrees, that in the present case, James and Janet Welch have satisfied all four essential unities. The LLC claims that James and Janet received the same 51% interest at the same time, with the right to full possession. They claim that the "instrument" conveying title was the operating agreement; as noted above, the State points out that the MRS/DOL Registration, James and Janet's deposition testimony, and the letter to Governor LePage all demonstrate that their intent to form a joint tenancy was "ambiguous at best," far short of the clear and convincing evidentiary standard. (Resp. Br. 6.)

The State's argument—that the additional evidence submitted and admitted to by both parties in the Joint Stipulation is contrary to the formation of a joint tenancy—is not persuasive as to what the parties intended when the owners began their legal relationship. While it is true that the Petitioner has at times expressed different understandings of his ownership status after

5

they began operating as an LLC, the Court relies upon the operating agreement to discern their intent, and also finds that the four unities coincide through the operating agreement.

Courts have deferred, both in Maine and out, to LLCs in drafting their own operating agreements. *See Dialogo, LLC v. Santiago-Bauza*, 425 F.3d 1, 2 (1st Cir. 2005) (referring to the LLC's Operating Agreement as the "controlling document."); *Beacon Investments LLC v. MainePCS, LLC*, No. 2:11-cv-00204(JAW), 2012 U.S. Dist LEXIS 44091, at *23 (D. Me. Mar. 28, 2012) (quoting that "the basic approach of the Delaware Act is to provide members with broad discretion in drafting the Agreement."); *Bell v. Walton*, 2004 ME 146, ¶ 3, 861 A.2d 687, 688 (acknowledging that the LLC's operating agreement was controlling with regard to member withdrawal); *Clary v. Borrell*, 727 S.E.2d 773, (S.C. Ct. App. 2012) (stating that "[t]he operating agreement of a limited liability company is a binding contract that governs the relations among the members, managers, and the company.").

The State points out, and the Court acknowledges, that Maine law is unsettled, and indeed silent, regarding whether or not a joint tenancy can be established in an operating agreement. Yet, an operating agreement may be controlling for purposes of establishing the management structure of an LLC. *See HL 1 LLC v. Riverwalk, LLC*, 2011 ME 29, ¶ 8, 15 A.3d 725, 729 (noting that the operating agreement was the instrument in which procedure for dissolution was established, and it also, among other provisions, addressed issues of membership). While the Law Court has not explicitly ruled on the supremacy of an operating agreement for purposes of establishing a joint tenancy, it has acknowledged that an LLC's operating agreement is the controlling instrument regarding matters of membership, dissolution, and ownership. *See id.* at ¶¶ 7-9.

6

With regard to the present matter, the Court finds that the LLC's operating agreement is the controlling instrument transferring title to James and Janet jointly. There does appear to exist true unity in time, title, instrument, and possession necessary to recognize the existence of a joint tenancy. James and Janet received the same 51% interest in the LLC when the operating agreement was signed by all parties. Additionally, the property they received was conveyed by the same operating agreement. *i.e.*, the by the same instrument, and both James and Janet have the right to full possession of the 51% membership interest in the LLC. This finding satisfies the clear and convincing standard required to prove the existence of a joint tenancy.

Before shifting to a discussion to the issue of James' potential majority interest, it is necessary to address one argument put forth by the LLC that the Court finds unpersuasive. In its briefs, the LLC asserts that unity of title arose by virtue of the conveyance of real property through a deed or of stock through a stock certificate. This, the LLC argues, establishes the intent required to create a joint tenancy. The LLC argues that, under 33 M.R.S.A. § 901, the 51% interest should be treated as a "certificate of stock in a corporation." (Pet.'s Br. 4.) That provision states:

> Certificates of stock in corporations, corporate bonds, corporate debentures, and other corporate securities . . . , record title to which is held in the name of 2 or more persons as joint tenants or under language indicating the intention that said property be held with the right of survivorship, shall be deemed to be held in an estate in joint tenancy with all the attributes and incidents of estates in joint tenancy created or existing at common law, and shall be deemed to be so held even though said property may have been transferred directly by a person to himself jointly with another or other persons.

33 M.R.S.A. § 901. This provision removes the need for a strawman when transferring ownership from grantor individually to grantor and another person jointly. It also establishes that when record title is documented in one of the enumerated forms and is designated as a joint tenancy, that suffices to in fact establish a joint tenancy. But, and the Law Court has emphasized

this, there is a difference between an ownership interest and the memorialization of that interest. *See Strout*, 68 A.2d at 248 (instructing that it is important to bear in mind the difference between *shares* of stock and stock *certificates*).

Here, however, the parties agree that the LLC has never issued any shares, securities, bonds, debentures, certificates, or any instruments or documentation reflecting the ownership division stated in the operating agreement. (Jt. Stip. ¶ 14.) The 51% interest at issue here is not "the same as having certificates of stock in a corporation," as the LLC urges (Pet.'s Br. 5), and therefore § 901 does not apply.

*II.     James' Status as Majority Owner*

Since James and Janet do hold the 51% interest in the LLC as joint tenants, the issue becomes whether or not the joint tenancy confers upon James the ability to act individually as the majority owner. In its favor, the LLC argues: "[b]y ignoring the joint tenancy's single, unified 51% membership interest in the LLC, the [Assessor] erroneously considers each spouse's relative contributions to the Petitioner LLC and asserts that James Welch is only 26% owner and his wife Janet is 25% owner." (Pet.'s Br. 5.) The Court agrees with the Petitioner, concurrent with an explanation of to what extent one joint tenant, acting individually, can control and enjoy a particular piece of property.

It is a basic principle of joint tenancy law that "joint tenants own *equal undivided* shares even though their initial contributions may have been unequal." *Bradford v. Dumond*, 675 A.2d 957, 961 (Me. 1996) (emphasis added). This has been the long-held position of the Law Court, as exemplified in *Greenberg v. Greenberg*, where the Law Court held that joint tenants own an equal undivided share of the property even if one joint tenant provides the entirety of the purchase price, and simultaneously deeds the land to himself and another as joint tenants. *See*

*Bradford*, 675 A.2d at 961 (summarizing the holding of *Greenberg v. Greenberg*, 141 Me. 320, 323-324, 43 A.2d 841, 842 (Me. 1945), and adopting its holding as a basic tenet with regard to notions of property ownership in a joint tenancy). The Law Court has consistently held that contributions made prior to the formation of a joint tenancy should not be considered because to do so would defeat joint ownership altogether. *See Ackerman v. Hojnowski*, 2002 Me. 147, ¶ 11, 804 A.2d 412, 416; *Boulette v. Boulette*, 627 A.2d 1017, 1018 (Me. 1993) (holding that "[c]ontributions of the parties to the property prior to the joint tenancy . . . are not equities growing out of the joint tenancy relationship[]" and should not be considered).

The Law Court has also described joint tenancy as "per my and per tout." *See Strout*, 68 A.2d at 252; *Poulson v. Poulson*, 145 Me. 15, 18, 70 A.2d 868, 869 (Me. 1950). "Per my and per tout" means "[b]y the half and by the whole." BLACK'S LAW DICTIONARY 1161 (7th ed. 1999). The *Strout* court explained that the right of survivorship, which is a fundamental trait of joint tenancy not disputed here, does nothing to alter the title of the surviving joint tenant because she already had the right to enjoy the whole. *See Strout*, 68 A.2d at 252.

While rights of survivorship in a joint tenancy are not presently at issue, the right of one joint tenant to transfer property into the joint tenancy must be analyzed to determine whether or not such a transfer serves to sever the joint tenancy. Applying the above principles, the Law Court held that one joint tenant may authorize a third party to harvest timber on jointly owned land against the wishes of the other joint tenant. *See Kapler v. Kapler*, 2000 Me. 131, ¶ 19, 755 A.2d 502, 509 (relying on the basic principle that "a joint tenant owns and possesses undivided whole of land."). Essentially, one joint tenant does not need the permission of the other to impact jointly owned property in some way. In other words, and in applying this theory to the present matter, James was not required to obtain Janet's permission to transfer the truck into the

9

LLC—the right of one joint tenant to make such a transfer is preserved. While the Law Court did not elaborate in *Kapler* with regard to this principle, the lower court reasoned: "[e]ach of the parties owned the whole while the trees remained real estate. On their severance, whereby they became personal property, each was possessed of the whole. Each had full and complete authority with respect to the property." *Kapler v. McKay*, No. CV-99-1111, 2000 Me. Super. LEXIS 18, at *3 (D. Me. Jan. 25, 2000). The court merely noted that the joint tenant making such use of the property might have to make an accounting to the other joint tenant. *See id.*

While there may appear to be few restrictions on property ownership as to joint tenants, there are limits to a joint tenant's control and authority over joint property. Most significantly, a joint tenant may not convey or alienate his interest without destroying the joint tenancy. *See Palmer*, 161 A.2d at 842 (explaining that when one joint tenant conveys his interest, both unity of time and title are destroyed, "and the grantee becomes a tenant in common with the other co-tenant.").

Here, however, James did not attempt to convey or alienate the 51% interest in the LLC; he merely made a transfer of jointly held property into the LLC. In that transfer, title to the property was retained by the LLC, and no severance of any of the four unities occurred. James' use and control consisted only of asserting the majority interest for purposes of claiming a tax exemption under 36 M.R.S.A. § 1764. Since James was the owner of the Vehicle, and since the Vehicle was transferred to the LLC of which James was a majority owner, the transfer should fall under the tax exemption of § 1764, and should not be taxed. If a single owner possessed the 51% interest, a valid incident of that ownership would no doubt be claiming the tax exemption under § 1764. As such, there is no apparent reason why James should be precluded from controlling the whole 51% interest for the same purpose.

Accordingly, the Court finds that the Assessor erred in failing to designate the transfer of the Vehicle from James to the LLC as tax exempt under § 1764. Reiterating the relevant language of the statute: "[t]he tax . . . must be levied upon all casual . . . sales involving . . . motor vehicles . . . *except* those sold for resale at retail sale or to a . . . limited liability company . . . *when the seller is the owner of a majority of the common stock* of the . . . ownership interests in the . . . limited liability company . . . ." 36 M.R.S.A. § 1764 (emphasis added). Based on an assessment of the relevant identified law, James Welch is a 51% owner of the LLC. Since James and Janet jointly own 51% of the membership interest in the LLC as joint tenants, James has an equal undivided interest in the whole of the 51% interest. Because James was the owner of the Vehicle and then transferred it to the LLC of which James was a majority owner, the transfer should not be taxed, and should be exempt under § 1764.

The entry will be:

The State Tax Assessment is reversed.

9/28/12

DATE

SUPERIOR COURT JUSTICE

11

| Date Filed | 9/3/10 | Kennebec | Docket No. | AP-10-43 |
|---|---|---|---|---|

County

Action ___ Petition For Review ___
80C

J. Murphy

Welch Oil Company, LLC        vs.        Maine Revenue Services

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Matthew W. Howell, Esq.<br>PO Box 545<br>York, ME 03909 | Gregg Bernstein, AAG<br>6 SHS<br>Augusta, Maine 04333 |

| Date of Entry | |
|---|---|
| 9/10/10 | Petition For Review, filed 9/3/10. s/Howell, Esq. |
| 9/16/10 | Proof of service on Maine Revenue Service served on 9/7/10 filed by Atty Howell. |
| 9/16/10 | Entry of appearance filed by Gregg Bernstein, AAG on behalf of Maine Revenue Service filed on 9/14/10. |
| 10/19/10 | Standard Scheduling Order mailed to attorneys of record. |
| 2/11/11 | Scheduling Order vacated, Murphy, J.<br>Copy mailed to Atty Howell and AAG Bernstein |
| 2/11/11 | Notice and Briefing Schedule issued and mailed to Atty Howell and AAG Bernstein. |
| 3/23/11 | Petitioner's Brief, filed. s/Howell, Esq. |
| 3/29/11 | Letter regarding Scheduling Order and Briefing Schedule, requesting the Scheduling Order be reinstated, and requesting a telephone conference, filed 3/24/11. s/Bernstein, AAG |
| 3/29/11 | Corrected letter, filed 3/28/11. s/Bernstein, AAG |
| 3/31/11 | ORDER, Murphy, J.<br>Briefing Schedule/Order is vacated. Scheduling Order to be issued forthwith. Court will not review Petitioner's brief and it will be maintained in sealed envelope.<br>Copy to Atty Howell and AAG Bernstein. |
| 4/11/11 | Standard Scheduling Order mailed to Atty Howell and AAG Bernstein. Discovery deadline 12/11/11. |
| 12/27/11 | Letter re: discovery dispute, filed. s/Bernstein, AAG |
| 1/4/12 | Phone conference scheduled for 1/5/12 at 12:45 p.m. |

**1/5/12**

Phone conference held.
ORDER, Murphy, J.
Petitioner shall provide personal and business returns for 2007 (federal) by 2/10/12. In addition, Petitioner shall respond to Respondent's Request for Production of Documents and provide all documents requested in Request #1 (a-c) by that same date. Failure to comply with this order may result in imposition of sanctions upon motion.
Copy to Atty Howell and AAG Bernstein

**1/31/12**

ORDER AMENDING SCHEDULING ORDER, Murphy, J. (1/27/12)
Motions for Summary Judgment, or any other dispositive motions, shall be filed by 3/9/12. Further proceedings shall be by further order of the Court. A status conference shall be set by the Clerk after 3/9/12.
Copy to Atty Howell and AAG Bernstein.

**3/1/12**

Motion To Amend Scheduling Order, filed 2/29/12. s/Bernstein, AAG

**3/16/12**

MOTION TO AMEND SCHEDULING ORDER, Murphy, J. (3/14/12)
By agreement of the parties it is hereby Ordered as follows:
The parties shall file on or before April 11, 2012, a Stipulated Set of Material Facts. If no such stipulation is possible the parties shall notify the Court on or before March 30, 2012, and request this matter be set for a telephone conference to schedule deadlines for dispositive motions. Assuming a Stipulated Set of Material Facts is filed,Motion for Summary Judgment shall be filed on or before April 27, 2012.
Copies to attys. of record.

**4/12/12**

Letter requesting conference with Court, filed 4/6/12. s/Bernstein, AAG.

**4/12/12**

Joint Stipulation, filed. s/Bernstein, AAG   s/Howell, Esq.

**5/3/12**

Phone conference held. J. Murphy presiding, Matthew Howell, Esq. and Gregg Bernstein, AAG.
Court will accept Joint Stipulation and Exhibits as the record in this case. Parties shall file simultaneous briefs by 6/8/12. They will both file rebuttal/reply briefs by 6/18/12. Court will take case under advisement at that time unless after review of briefs Court finds oral argument would be of assistance to Court.
Copy to Atty Howell and AAG Bernstein

**6/8/12**

Petitioner's Brief, filed. s/Howell, Esq.

**6/8/12**

Brief of Respondent Maine State Tax Assessor, filed. s/Bernstein, AAG

**6/15/12**

Reply Brief Of Respondent Maine Tax Assessor, filed. s/Bernstein, AAG

**6/20/12**

Petitioner's Reply Brief, filed 6/19/12. s/Howell, Esq.

**7/18/12**

Oral argument scheduled for 8/8/12 at 9:00 a.m.
Motion list mailed to Atty Howell and AAG Bernstein

**8/8/12**

Oral argument held. Murphy, J. Matthew Howell, Esq. and Gregg Bernstein, AAG. Tape 1579, Index 857-2140.
Under advisement.

| | |
|---|---|
| 10/2/12 | ORDER ON RULE 80C APPEAL, Murphy, J.  (9/28/12)<br>The State Tax Assessment is reversed.<br>Copy to Atty Howell and AAG Bernstein<br>Copy to repositories. |

Welch Oil Company, LLC v. Maine Revenue Services

Page 3

Docket No.    AP-10-43

10/2/12    ORDER ON RULE 80C APPEAL, Murphy, J.  (9/28/12)
The State Tax Assessment is reversed.