2003 ME 68

**Bruce TISDALE**

v.

**Brian RAWSON.**

Supreme Judicial Court of Maine.

Argued: March 11, 2003.
Decided: May 8, 2003.

Jed Davis, Aglaia David (orally), Jim Mitchell and Jed Davis, P.A., Augusta, for plaintiff.

Curtis Webber (orally), Linnell, Choate & Webber, Auburn, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

RUDMAN, J.

[¶ 1] Brian Rawson appeals from a judgment entered in the Superior Court (Kennebec County, *Marden, J.*) substituting Bruce Tisdale for the Piney Heights Road Association (Association) to cure the Association's lack of capacity, affirming the District Court's determination that the Association properly assessed Rawson for 1999 and 2000 pursuant to the Private Ways Act, 23 M.R.S.A. §§ 3101–3105 (1992 & Supp.2002), finding that the Association's assessment method does not violate the Maine Constitution, and awarding attorney fees. Rawson contends the Superior Court erred by (1) substituting Tisdale for the Association; (2) not finding the Association's assessment is a tax that violates the Maine Constitution; (3) concluding the Association's 1999 assessment is valid; and (4) approving the attorney fees request without supporting documentation. Tisdale concedes that the Association did not properly assess road fees for 1999, and we find no error with respect to the 2000 assessment. We, therefore, vacate in part

the judgment of the Superior Court and remand to the Superior Court to remand to the District Court for entry of a corrected judgment.

## I. BACKGROUND

[¶ 2] The Association is an unincorporated organization formed by landowners in Monmouth to raise and collect funds to maintain several private roads benefiting their properties. Prior to 1999, the Association was not organized pursuant to the Private Ways Act and did not make mandatory assessments. The Association assessed its members on a $100 per parcel basis until 1998. In 1998, the Association changed to a per unit assessment method, with a "unit" corresponding to each separate residence on a landowner's property. The rationale for a per unit assessment method was that this method best reflects each landowner's impact on the Association's roads. The basic yearly charge was set at $100 per unit.

[¶ 3] In July of 1999, the Association's landowners met and voted to organize pursuant to the Private Ways Act. The Act enables landowners to organize under its terms in order to utilize the Act's assessment authority. *See* 23 M.R.S.A. § 3101 (Supp.2002).[1] The Act authorizes member landowners to determine the cost of repairing roads, assess landowners the cost of the repairs, select assessors and a road commissioner to make assessments and collect the assessed fees, and authorizes the road commissioner to contract for repair work. *See id.* §§ 3101, 3103.[2]

[¶ 4] The Association's members elected assessors pursuant to section 3103 and elected Tisdale as the Association's Road Commissioner pursuant to section 3101. Tisdale, as Road Commissioner, was primarily responsible for collecting assessments. *See id.* § 3103 (Supp.2002). The Association's members also agreed, at the July meeting, to increase year-round residents' per unit assessments thirty-five dollars in 2000 to pay for winter sanding and plowing.

[¶ 5] Rawson owns two properties benefited by the Association's roads. Rawson maintains five units on these two properties, including: his home, two apartments within his home, a separate rental unit on the same lot, and a fourth rental unit on

---

1. Section 3101 provides, in part:

   **§ 3101. Call of meetings; repairs**
   Except as provided in this section, when 4 or more parcels of land are benefited by a private way or bridge as an appurtenant easement or by fee ownership of the way or bridge, the owners of any 3 or more of the parcels, as long as at least 3 of the parcels are owned by different persons, may make written application to a notary public to call a meeting, who may issue a warrant setting forth the time, place and purpose of the meeting, copies of which must be posted at some public place in the town and mailed to the owners of all the parcels benefited by the way at the addresses set forth in the municipal tax records, at least 30 days before such time. When so assembled, they may choose a commissioner, to be sworn, and they may determine what repairs are necessary and the materials to

be furnished or amount of money to be paid by each owner for the repairs and the manner of calling future meetings.

2. Section 3103 provides:

   **§ 3103. Contracts for repair; assessments**
   The owners, at a meeting held under section 3101, may authorize a contract to be made for making and keeping the way or bridge in repair by the year or for a less time; may raise money for that purpose and choose assessors to assess it on the owners in proportion to their interests, who shall deliver their assessment with a warrant for its collection to the commissioner. The warrant must be in substance such as is prescribed for collection of town taxes. The commissioner shall collect the same as town taxes are collected, and be liable for neglect of duty as town collectors are for similar neglects.

his second lot. Rawson was assessed and received bills for 1998, 1999, and 2000. In 2000, Rawson was billed a total of $1,675; this charge consisted of unpaid assessments of $100 per unit for his five units in 1998 and 1999, and $135 on each of his five units in 2000.

[¶ 6] When Rawson failed to pay the fees due, the Association filed suit in Small Claims Court to collect the 1998, 1999, and 2000 assessments. The Association sought its assessed charges, accrued interest, and attorney fees expended to collect the assessments. The District Court heard testimony from the parties concerning the Association's prior assessments, the landowners' decision to organize under the Act, the election of assessors and a road commissioner, the Association's past and current assessment method, and the facts leading to the suit to enforce the assessments made upon Rawson for 1998 through 2000. The parties entered in evidence as exhibits the Association's 2000 warrant and a map of the properties benefited by the roads. Rawson represented himself before the District Court.

[¶ 7] The District Court (Augusta, *Anderson, J.*) found that the Association properly followed the Act's procedures and its assessment method had a rational basis. The court entered a judgment in favor of the Association, for the 1998 through 2000 assessments, attorney fees expended to collect the assessment, and costs.

[¶ 8] Rawson retained counsel, filed his notice of appeal to the Superior Court, and requested permission to supplement the record pursuant to M.R. Civ. P. 76F(b) with the Association's July 1999 meeting minutes. Rawson reasoned that the court should allow him to supplement the record because he represented himself before the District Court and was unaware that the meeting minutes were legally significant. The Superior Court agreed that the information was necessary to determine if the Association had met statutory requirements and granted the request. The court ordered "all records, minutes, acknowledgments, oaths, etc. must be filed with the court as part of the record."

[¶ 9] The court's order resulted in a significant expansion of the record, including entry of: (1) the Association's written application to the notary to call a meeting pursuant to the Act; (2) the Association's warrant notifying affected landowners of the July 1999 meeting; (3) a notary's return indicating compliance with the Act's notice requirements; (4) the July 1999 meeting minutes; (5) the Assessors' certification of assessment resulting from the 1999 meeting; (6) the Association's 2000 assessment warrant; (7) the Assessors' 2000 certificate of assessment; (8) the July 2000 meeting minutes; (9) the Assessors' certification of assessment following the 2000 meeting; (10) the Association's 2001 assessment warrant; (11) the Assessors' 2001 certificate of commitment; (12) the Assessors' 2001 certificate of assessment; and (13) the July 2001 meeting minutes.

[¶ 10] After a hearing, the Superior Court found the Association, as an unincorporated entity, lacked capacity to sue in its own name and substituted Tisdale for the Association to correct the error. The court also found the Association had (1) properly followed the Act's notice and process procedures; (2) used a proper assessment method within the meaning of section 3103's "in proportion to ownership interest"; and (3) improperly assessed charges for 1998 because it was not incorporated and, pursuant to P.L.1997, ch. 682, § 3, was not authorized to use the Act's assessment procedures prior to July 1, 1999.[3]

---

**3.** P.L.1997, ch. 682, § 3 provides:

**Sec. 3. Application.** Before July 1, 1999,

[¶ 11] The Superior Court vacated the District Court's 1998 assessment award and substituted plaintiffs, but otherwise affirmed the court's judgment. Rawson thereafter filed a motion to alter or amend judgment, which the Superior Court denied. This appeal followed.

## II. DISCUSSION

[¶ 12] When the Superior Court acts in its appellate capacity, we review the decision of the District Court directly for abuse of discretion, errors of law, or findings not supported by the evidence. *Franklin Printing v. Harvest Hill Press,* 2002 ME 116, ¶ 5, 801 A.2d 1004, 1006.

### A. Supplementing the Trial Court Record

[¶ 13] We begin with the Superior Court's order permitting Rawson to supplement the record developed by the District Court. Rawson made a request to the Superior Court to supplement the record pursuant to M.R. Civ. P. 76F(b).[4] The Superior Court granted the request, allowing Rawson to supplement the record with a considerable amount of information that was not before the District Court. The court reasoned that the information was necessary to determine whether the Association had met statutory requirements.

[¶ 14] The Superior Court, in these circumstances, may correct or modify a properly settled record through Rule 76F(b). Rule 76F(b) was not intended, however, to give litigants the opportunity to create a record on appeal by entering new evidence to aid the appellate court's

only owners who are members of road associations incorporated as of March 1998 may utilize the process set forth in this Act.

4. Rule 76F(b) provides, in pertinent part:
   If anything material to either party is omitted from the record on appeal by error or accident or is misstated therein, the parties by stipulation, or the District Court judge,

analysis of the issues before it. An appellate court must limit its review to the record developed by the trial court. *See Sturtevant v. Town of Winthrop,* 1999 ME 84, ¶ 9, 732 A.2d 264, 267 (limiting review of sufficiency of evidence to the record developed by trial court). An omission refers to the inadvertent omission of documentary presentation of evidence otherwise presented to the court, rather than evidence that the parties neglected to offer in any fashion. The Superior Court, acting in its appellate capacity, erred by allowing Rawson to supplement the record because this evidence was not entered to correct an omission, misstatement, or other mistake affecting the record.

### B. Substitution of Plaintiffs

[¶ 15] Rawson next asserts that the Association has no capacity to sue due to its unincorporated status, and that the court erred by substituting Tisdale for the Association. Generally, an unincorporated association does not have capacity to sue or be sued in its own name, absent specific statutory authorization. *Gulick v. Bd. of Envtl. Prot.,* 452 A.2d 1202, 1202–03 n. 1 (Me.1982) (citing 1 Field, McKusick & Wroth, *Maine Civil Practice* § 4.4 at 67 (2d ed.1970) (hereinafter 1 Field, McKusick & Wroth at ——)). The Association is unincorporated, and the Act does not authorize it to sue, thus Rawson correctly asserts that the Association lacks capacity to sue him in its own name. *See id.* The Superior Court recognized this limitation

either before or after the record is transmitted to the Superior Court, or the Superior Court, on a proper suggestion or of its own initiative, may direct that the omission or misstatement shall be corrected, and if necessary that a supplemental record shall be certified and transmitted by the clerk.

and substituted Tisdale as the real party in interest to correct the limitation.

■ [¶ 16] The court's substitution was not erroneous. Section 3102 authorizes landowners to bring suit to enforce an assessment properly made by an association against a landowner that is "neglecting to pay." *See* 23 M.R.S.A. § 3102 (Supp.2002).[5] Section 3103 grants a road commissioner broad assessment collection authority, and does not restrict a road commissioner from employing judicial process to collect properly assessed fees. *See id.* § 3103. Tisdale is both a landowner and the Association's Road Commissioner, thus he has standing to bring this suit. *See id.*

■ [¶ 17] Moreover, M.R. Civ. P. 17(a) authorizes a court to substitute an incorrectly named plaintiff with the real party in interest.[6] The pertinent language of Rule 17(a), adopted from the corresponding federal rule, directs courts to allow a "reasonable time" after objection to allow ratification by, or joinder or substitution of, the real party in interest. *See* M.R. Civ. P. 17(a); 1 Field, McKusick & Wroth at 349. This provision of Rule 17(a) prevents forfeiture when the determination of the proper party to sue is difficult or when an understandable mistake has been made. *See* 1 Field, McKusick & Wroth at 349; FED. R. CIV. P. 17(a) advisory committee's note on 1966 amendments; *see also Royal Coachman Color Guard v. Marine Trading & Transp., Inc.,* 398 A.2d 382, 384 (Me.1979) (finding unincorporated association could be substituted with real party in interest pursuant to Rule 17(a), and remanding to the District Court to permit substitution of a real party in interest or ratification of the association as plaintiff).

[¶ 18] In the federal courts, Rule 17(a) of the Federal Rules of Civil Procedure has been interpreted to allow liberal substitution of plaintiffs when the change is "merely formal" in nature. *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,* 106 F.3d 11, 20 (2d Cir.1997) ("A Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original com-

---

5. Section 3102 provides:

   **§ 3102. Commissioner's duties; neglect of owners to pay**

   The commissioner chosen under section 3101, with respect to the way or bridge, has the powers of a road commissioner. If any owner, on requirement of the commissioner, neglects to furnish that owner's proportion of labor, materials or money, the same may be furnished by the other owners and recovered of the owner neglecting to pay in a civil action, together with costs of suit and reasonable attorney's fees. The commissioner's apportioning of the cost of repairs to the road undertaken pursuant to the provisions of section 3101 may not exceed 1% of an individual owner's property valuation in any calendar year.

   Section 3102's reference to "powers of a road commissioner" is addressed by 23 M.R.S.A. § 2701 (1992). Section 2701 provides, in pertinent part:

   **§ 2701. Powers and duties**

   The road commissioner, under the direction of a majority of the selectmen, shall have charge of the repairs of all highways and bridges within the towns and shall have authority to employ the necessary personnel and equipment and purchase material for the repair of highways and bridges. The road commissioner shall give bond to the satisfaction of the selectmen and be responsible to them for the expenditure of money and discharge of his duties generally.

6. Rule 17(a) states, in pertinent part:

   No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest, and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

plaint's factual allegations as to the events or the participants."). Most federal courts, following the advisory committee's note to Rule 17(a), limit the rule's application to circumstances when an understandable mistake has been made or when the correct party is difficult to determine. *E.g., Wieburg v. GTE Southwest, Inc.*, 272 F.3d 302, 308 (5th Cir.2001) (citations omitted).

[¶ 19] Tisdale was a participant in the assessment collection process and represented the Association before the District Court. Substituting Tisdale for the Association is merely a formal change that does not alter in any way the factual allegations pertaining to events or participants involved in this suit. *See Advanced Magnetics, Inc.*, 106 F.3d at 20. Prosecuting the case in the Association's name, moreover, was an understandable mistake to which Rule 17(a) can be applied. *See Royal Coachman Color Guard*, 398 A.2d at 384. The Superior Court, therefore, did not err by substituting Tisdale as the real party in interest. *See Advanced Magnetics, Inc.*, 106 F.3d at 20; *Royal Coachman Color Guard*, 398 A.2d at 384.

C. The Association's Assessment Method

[¶ 20] Rawson contends that the Association's assessments are a "tax" that violates article IX, section 8 of the Maine Constitution because the Association failed to apportion and assess amounts equally according to a property's "just value."[7] A tax is generally understood as a charge to support government, which legislatures use to raise funds for public purposes or to accomplish some governmental end. *Brewer Brick Co. v. Inhabitants of Brewer*, 62 Me. 62, 70 (1873) (citations omitted);

*Bd. of Overseers of the Bar v. Lee*, 422 A.2d 998, 1004 (Me.1980), *appeal dismissed*, 450 U.S. 1036, 101 S.Ct. 1751, 68 L.Ed.2d 233 (1981).

[¶ 21] The Association's assessments pay for the maintenance costs of private roads benefiting only private landowners within the Association. The assessments serve neither a public purpose nor a governmental end, thus the assessments are not taxes and are not subject to constitutional requirements. *See Brewer Brick Co.*, 62 Me. at 70.

D. The Association's 1998 and 1999 Assessments

[¶ 22] Rawson contends that the Association's 1998 and 1999 assessments violate P.L.1997 ch. 682, § 3 and the Act's assessment procedures. Whether the Association was eligible to complete assessments in 1998 and 1999 requires application of the Act, and such application of a statute is a question of law that we review de novo. *DaimlerChrysler Servs. N. Am., LLC v. State Tax Assessor*, 2003 ME 27, ¶ 7, 817 A.2d 862, 864.

[¶ 23] At oral argument, counsel for Tisdale conceded that the Association was not incorporated when it made its 1998 assessment and that no warrant was issued for the 1999 assessment. Prior to July 1, 1999, only landowners who were members of a road association incorporated as of March 1998 were authorized to make assessments pursuant to the Act. *See* P.L. 1997, ch. 682, § 3. Landowners organized pursuant to the Act must also follow a mandatory warrant procedure to make assessments. *See* 23 M.R.S.A. § 3103 ("[The assessor] *shall* deliver their assessment

---

7. ME. CONST. art. IX, § 8 states, in pertinent part:

Section 8. All taxes upon real and personal estate, assessed by authority of this State, shall be apportioned and assessed equally according to the just value thereof.

with a warrant for its collection to the commissioner.") (emphasis added).

[¶ 24] The Association was unorganized in 1998, thus the Superior Court correctly concluded that the Association could not utilize the process set forth in the Act to assess fees for that year. *See* P.L.1997, ch. 682, § 3. In 1999, as was conceded at oral argument, the Association failed to follow the Act's warrant procedure to collect the assessment, making that assessment invalid. *See* 23 M.R.S.A. § 3103. The District Court erred, therefore, by awarding the Association its 1998 and 1999 assessments.

E. Attorney Fees

[¶ 25] In light of our determination that the 1998 and 1999 assessments are invalid, the attorney fee award must be vacated. Upon remand, the District Court shall determine what, if any, attorney fees Tisdale may recover for enforcement of the 2000 assessment.

The entry is:

The judgment of the Superior Court permitting the substitution of Bruce Tisdale for the Association is affirmed. The balance of the judgment of the Superior Court is vacated. Remanded to the Superior Court for remand to the District Court for entry of judgment consistent with this opinion.