ENTERED NOV 1 9 2014

STATE OF MAINE
YORK, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-13-225

*JON-YOR-10-24-14*

JACLINS WAY ROAD
ASSOCIATION BY
LAUREN FRIES,
Road Commissioner,

Plaintiff,

v.                                                          **ORDER**

ROBERT MADORE and
MICHELLE L. MADORE,

Defendants.

## I. Background

### A. Procedural Posture

This is an action for declaratory relief arising out of Robert and Michelle L. Madore's ("the Madores") refusal to pay maintenance fees for the private road, Jaclins Way, benefitting their property. Plaintiff Jaclins Way Association ("the Association") originally brought claims in three counts: Count One for failure to pay assessment fees under 23 M.R.S. § 3101(2), Count Two for equitable estoppel seeking to enforce the road maintenance agreement, and Count Three for unjust enrichment due to the Madores' continued use of the road without payment. The Association has amended its complaint, dropping Counts Two and Three. (Pl.'s Amended Compl. 3-4.)[1] The court previously

---

[1] The Association has also withdrawn a motion for attorney's fees pending resolution of this motion for summary judgment.

1

denied the Association's motion for judgment on the pleadings because an issue of fact remained as to whether the Madores had the opportunity to vote on matters of Jaclins Way maintenance. The Association now moves for summary judgment on the only remaining count.

### B. Facts

Jaclins Way is a private way in Kennebunk, Maine. (Pl.'s S.M.F. ¶ 1.) The way benefits four parcels, including the Madores, who live at 11 Jaclins Way. (Pl.'s S.M.F. ¶ 2.) In 2009, a Road Maintenance Agreement ("the Agreement") was drafted and executed by three of the benefitted parcels on Jaclins Way, but the Madores have refused to sign the Agreement and have not contributed to the cost of maintaining the Way, including grading and plowing. (Pl.'s S.M.F. ¶¶ 3-4, 14-15.)[2] The three owners who signed the Agreement have born these expenses between 2009 and 2013, which total "at least $700." (Pl.'s S.M.F. ¶ 16.)

On July 15, 2013, a meeting was held at which the Association voted on various agenda items related to the maintenance and repair of the Way. (Pl.'s S.M.F. ¶ 8.) Items to elect a road commissioner, authorize repairs, and assess the cost of those repairs equally among the four owners were voted on and passed 3-0. (Pl.'s S.M.F. ¶¶ 8, 11.) The Jaclins Way owners received written notice from a notary public of the meeting, and Defendant Robert Madore attended, but he maintained that the meeting was not legal and elected not to exercise a vote. (Pl.'s S.M.F. ¶¶ 7-8.) The Madores have refused to pay the $1,250 assessed for 2013 and otherwise refused to pay for repairs and maintenance of the Way. (Pl.'s S.M.F. ¶¶ 12-13.)

---

[2] While the Madores argue that they were not bound by the Agreement because they did not sign it, the Madores do not dispute the fact that they had an opportunity to review and sign the Agreement. (Def.'s Opp. Summ. J. 1.; Pl.'s S.M.F. ¶ 3.)

## II. Discussion

### A. Summary Judgment Standard

"Summary judgment is appropriate if the record reflects that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Dussault v. RRE Coach Lantern Holdings, LLC*, 2014 ME 8, ¶ 12, 86 A.3d 52, *quoting F.R. Carroll, Inc. v. TD Bank, N.A.*, 2010 ME 115, ¶ 8, 8 A.3d 646. "A material fact is one that can affect the outcome of the case." *McIlroy v. Gibson's Apple Orchard*, 2012 ME 59, ¶ 7, 43 A.3d 948, *quoting N. E. Ins. Co. v. Young*, 2011 ME 89, ¶ 17, 26 A.3d 794. If facts are undisputed but nevertheless capable of supporting conflicting, plausible inferences, "the choice between those inferences is not for the court on summary judgment." *Lewis v. Concord Gen. Mut. Ins. Co.*, 2014 ME 34, ¶ 10, 87 A.3d 732.

### B. Private Way Meetings and Repair Obligations

Under Section 3101(2) governing private ways and repair fees, "When 4 or more parcels of land are benefited by a private road, private way or bridge as an easement or by fee ownership of the private road, private way or bridge," any three parcel owners (provided the parcels are owned by different individuals) may apply to a public notary to call a public meeting according to the statutory procedure. 23 M.R.S. § 3101(2) (2013).

> By a majority vote of the owners present and voting in person or by written proxy or absentee ballot, the owners may determine what repairs and maintenance are necessary and the materials to be furnished or amount of money to be paid by each owner for repairs and maintenance and may determine the amount of money to be paid by each owner for other costs . . . . The determination of each owner's share of the total cost must be fair and equitable and based upon a formula provided for in the road association's bylaws or adopted by the owners at a meeting called and conducted pursuant to this section.

3

23 M.R.S. § 3101(5). In construing this provision, the Law Court has held that "a majority vote" means a majority of association members "actually present or represented by proxy at a properly called road association meeting." *Goudreau v. Pine Springs Rd. & Water, LLC*, 2013 ME 20, ¶ 13, 60 A.3d 788.

The Madores raise a number of arguments in their opposition to summary judgment. First, the Repair Maintenance Agreement ("the Agreement") is not signed by them, and they therefore argue they are not bound by its terms. The Madores point to their easement as authority for their use of Jaclins Way. (Def.'s Opp. Summ. J. 4.) The Madores further contend the requirements of Section 3101(2) have not been met because the items had already been decided before Robert Madore arrived at the July 15, 2013 meeting. (Def.'s Opp. Summ. J. 2-3.) Finally, the Madores object to the Association's desired maintenance—to improve the road with a reclaimed tar rather than maintaining the original dirt surface. (Def.'s Opp. Summ. J. 2-3.)

While the Madores have an easement to use Jaclins Way, this does not excuse them from any payment obligations they may have to the Association. *See Goudreau v. Pine Springs Rd. & Water, LLC*, 2012 ME 70, ¶¶ 12-15, 44 A.3d 315 (holding lot owner's easements conferred the right to use private way and to form an association under Section 3101(2)). Whether Madores may lawfully use Jaclins Way is not disputed. The issue is whether the requirements of Section 3101(2) have been met, in particular whether a proper vote was held.

The Madores argue that the vote at the July 15, 2013 meeting was invalid because the "majority of the items were decided prior to the meeting and other agenda items were not voted on." (Def.'s Opp. Summ. J. 1.) For example, the Madores aver that Lauren

4

Phipps was elected road commissioner, established a bank account, and established the costs and distribution prior to the meeting. (Def.'s Opp. Summ. J. 1.) As authority for this assertion, the Madores point to the "Handout" from the July 15, 2013 meeting that established an agenda of items to be voted on; the material portions of the Handout appear as follows:

> **1. A vote to elect a Road Commissioner, or a Board of Road Commissioners for Jaclins Way having all of the powers of such office under the Laws of the State of Maine.**
>
> Vote Lauren Phipps Road Commissioner[3]
>
> **2. A vote approving the list of repairs planned for the Jaclins Way for the 12 months from July 1, 2013 to June 30, 2014 and a budget for repair expenses.**
>
> Road Repairs – Grating and reclaim fill material to be completed immediately. Cost: $1,200 - $1,500[4]
>
> **3. A vote approving a budget for plowing and other maintenance expenses for the 12 months from July 1, 2013 to June 30, 2014 not to exceed $5,000.**
>
> $1,250 per household per year. $625 biannually. My suggestion is to pay $625 now (July – to repair the road) Next installment due December for winter plowing.
>
> *I am open to suggestions on a payment schedule.*
>
> . . .
>
> **A dedicated Jaclins Way Road Association escrow account has been set up at Kennebunk Savings.**
>
> Checks for road maintenance can be made payable to the *Jaclins Way Road Association* and can be delivered to Lauren Phipps, 26 Jaclins Way.[5]

---

[3] The document has hand-written notes. An arrow appears pointing to this entry that states: "they already voted? Why?"

[4] Hand-written in the margin is: "Quotes?"

[5] "Lauren Phipps" is circled with another arrow, with more handwriting that states: "She set this up before the meeting why? Why can't we all be present?"

(Def.'s Opp. Summ. J. 3, Ex. E.) The Madores argue that 23 M.R.S. § 3101 "rests on all parties getting together and voting on the statutory elements" which in their view, "did not occur." (Def.'s Opp. Summ. J. 1-2; Def.'s Reply Pl.'s Reply Opp. 1.)

The Madores do not contend they lacked notice of the meeting. (Def.'s Opp. Summ. J. 2, ¶ 10) ("Admitted; Defendants received the noticed [sic].") Neither do they dispute that Robert Madore attended the meeting. (Def.'s Opp. Summ. J. 2, ¶ 12.) Rather, the Madores appear to press two arguments. First, they were not a party to the Association Agreement and therefore were "not a party to [the Association's] proceeding." (Def.'s Opp. Summ. J. 2.)[6] Second, the meeting was improperly conducted because items had been voted on ahead of time.

Even drawing all reasonable inferences in favor of the Madores, which this court must do on summary judgment, no reasonable reading of the Handout indicates items had been decided and voted upon before the meeting. Rather, the Handout clearly outlines an agenda with proposals for the Association to vote on as a group, which apparently occurred. (Pl.'s S.M.F. ¶ 8.) The Madores are unable to point to any evidence (aside from their reading of the Handout) that establishes items were voted on before the meeting. By its plain terms, the statute does not even require all members of an association be present and vote for a vote to be valid:

> By a majority vote of the owners present and voting in person or by written proxy or absentee ballot, the owners may determine what repairs and maintenance are necessary and the materials to be furnished or amount of money to be paid by each owner for repairs and maintenance and may determine the amount of money to be paid by each owner for other costs.

[6] As noted above, the Madores do not dispute they there were aware of and had the opportunity to sign the Agreement.

6

23 M.R.S. § 3101(5). The Law Court has construed the requirements of this section broadly, holding it does not require a majority of *all* member owners vote for a road maintenance cost vote to be valid, but simply those owners who elect to attend the meeting and vote. *Goudreau*, 2013 ME 20, ¶¶ 12-13, 60 A.3d 788.

The Madores have come forward with only their subjective view of how the meeting agenda was set and how the meeting proceeded. Robert Madore attended the meeting, but apparently contested that the Madores were bound by the agreement, complained the Handout indicated matters had already been decided, and took issue with the costs and materials to be used to maintain the road.[7] The Madores had notice and the opportunity to vote at the meeting. They elected not to do so, and this decision does not render the meeting and vote invalid under Section 3101. The fees calculated and assessed had a rational basis in accord with Section 3101, the Madores have acknowledged the validity of the Association agreement and participated in Association business, and continue to use the road maintained by the Association. They are therefore "owners of [a] parcel[] of land benefitted by a private road" within the meaning of the statute, and liable for the assessments. *See* 23 M.R.S. § 3101(2), (5); *see also Tisdale v. Rawson*, 2003 ME 68, ¶¶6-7, 822 A.2d 1136 (fees and assessments with a rational basis that follow procedures of the statute are valid and enforce against non-paying benefitted owners).

---

[7] The Madores argue the use of reclaimed tar is "the first step towards paving this private way . . . in direct violation of [23 M.R.S. § 3101]." The Madores do not argue that this "first step" is in fact "paving" within the meaning of the statute. In any event, the statute does not strictly prohibit paving. 23 M.R.S. § 3101(1)(B) ("'Repairs and maintenance' does not include paving, except in locations where limited paving is demonstrated to be a cost-effective approach for fixing an erosion problem . . . .").

The Madores' opposition to summary judgment thus fails to create a genuine issue of material fact and the Association is entitled to judgment as a matter of law on its claim for maintenance costs under Section 3101.

The Plaintiff's Motion for Summary Judgment is hereby GRANTED.

SO ORDERED.

DATE: October 24, 2014

_____
John O'Neil, Jr.
Justice, Superior Court

* clerk to enter judgment for plaintiff on count I in amount of adjustment (1250) plus interest, costs, if applicable
J. Ho.

8

CV-14-192

ATTORNEY FOR PLAINTIFF:
DAVID LOURIE
LAW OFFICE OF DAVID A LOURIE
189 SPURWINK AVENUE
CAPE ELIABETH ME  04107


DEFENDANTS PRO SE:
ROBERT & MICHELLE  MADORE
11 JACLINS WAY
KENNEBUNK ME  04043