MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:      2014 ME 146
Docket:        Yor-13-518
Submitted
 On Briefs:    September 23, 2014
Decided:       December 18, 2014

Panel:        SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, JABAR, and
              HJELM, JJ.
Majority:     SAUFLEY, C.J., and SILVER, MEAD, GORMAN, and HJELM, JJ.
Dissent:      ALEXANDER and JABAR, JJ.

VICTOR SUNSHINE

v.

STEPHEN M. BRETT


SILVER, J.

[¶1]  Stephen M. Brett appeals from a judgment following a jury trial in the Superior Court (York County, *Fritzsche, J.*) in favor of local road commissioner Victor Sunshine on Sunshine's complaint to recover several years' worth of unpaid assessments for maintenance on a private road.  Brett asserts that the road association failed to strictly comply with the requirements of the Private Ways Act, 23 M.R.S.A. §§ 3101-3104 (1998 & Supp. 2004),[1] and that it therefore lacks the authority to collect assessments.  We vacate the judgment.

---

[1]  Several of these sections have been amended since 2004, but not in any way that affects this appeal. *E.g.*, P.L. 2013, ch. 198, §§ 1-10 (effective August 1, 2014); P.L 2007, ch. 625, §§ 1-4 (effective July 18, 2008).

# I. BACKGROUND

[¶2] Ocean Circuit Drive (OCD) is a private road in Cape Neddick that provides access to sixteen parcels of property.[2] Eleven of the parcels contain homes and five are unimproved. Beginning in 1992, residents who lived along the road informally appointed a road commissioner to handle arrangements for maintenance and plowing of the road.[3] In 2003, the group of neighbors decided to form a road association pursuant to the Private Ways Act. Donna Hayford, one of the residents of OCD, sent notice of the association's first meeting to all residents who, in her judgment, used OCD "on a regular basis." She contacted everybody who "use[d] the road, that benefited from the road," but she did not notify the owners of all sixteen lots with rights of access over OCD.

[¶3] At the association's first meeting in 2004, Hayford was elected road commissioner and all of the attendees, including Brett, signed a "Road Maintenance Agreement." The attendees also unanimously agreed that owners of lots without structures would not be billed for maintenance because they did not make as much use of the road, and those who lived east of Lake Carolyn, closer to

---

[2] Brett argued at trial—and continues to argue on appeal—that twenty-four parcels could be reached via OCD and are therefore "benefited" by OCD. However, the record reflects that OCD provides direct access to only sixteen parcels.

[3] At that time, only three or four homes had been constructed along the road.

the public road, would each contribute only 75% of a share, while homeowners living further down the private road would each contribute 125% of a share.

[¶4] A few days later, Brett placed a letter in Hayford's mailbox indicating that he was revoking his signature on the agreement and requesting additional documentation concerning the division of maintenance costs. The letter stated that Brett would remit payment upon receipt of the requested materials. Although Hayford provided the documentation he requested, Brett never attended another association meeting and never paid any of the bills he received from the association. The association continued to bill Brett annually for his share of maintenance expenses pursuant to the Road Maintenance Agreement. Victor Sunshine became the road commissioner in 2007 following Hayford's first term.

[¶5] On June 15, 2009, Sunshine filed a claim against Brett in small claims court seeking payment of assessments dating back to 2005 in the amount of $1706.67. The District Court entered judgment for Sunshine in the amount of $2138.14, plus $1800 in attorney fees, on July 1, 2011.[4] Brett timely appealed and demanded a jury trial in the Superior Court pursuant to M.R.S.C.P. 11(d)(2).

[¶6] Before trial, the Superior Court granted Sunshine's verbal motion to amend the pleadings to include a claim for recovery pursuant to the theory of

---

[4] The case was delayed by continuances requested by both parties. Additionally, a default judgment was entered against Brett when he failed to appear for trial on January 28, 2011. Brett successfully moved to set aside the default because, due to a typographical error, the clerk's office had sent notice of the trial date to an incorrect address. The default judgment was vacated on March 4, 2011.

4

quantum meruit. Brett filed a motion in opposition, essentially asking the court to reconsider its decision. The court granted Brett's motion. Consequently, Sunshine was not permitted to pursue a quantum meruit claim at trial.

[¶7] Throughout the trial, Sunshine's counsel and Brett, who represented himself, disagreed about the meaning of the word "benefited" as it is used in the Private Ways Act. The court did not elaborate on the meaning of "benefited" but instead instructed the jury to interpret the term. The jury returned a verdict in Sunshine's favor in the amount of $4562.18 plus interest. The court entered judgment in the amount of $6000[5] on October 25, 2013, and Brett appealed.

## II. DISCUSSION

[¶8] Brett argues that, because the association failed to strictly comply with the requirements of the Private Ways Act, it does not have standing to bring a lawsuit against him. He further contends that the trial court erred by failing to instruct the jury that "benefited parcels" means all abutting parcels. Sunshine asserts that he has standing as both a landowner and as road commissioner to bring suit against Brett for unpaid assessments. He also contends that the association substantially complied with the Private Ways Act. Because Sunshine has neither raised any arguments relating to quantum meruit nor cross-appealed from the

---

[5] The court's reason for entering judgment in this amount is not clear from the record; however, Sunshine requested an award of attorney fees in the amount of $9487.

court's ruling prohibiting him from pursuing a quantum meruit claim at trial, we do not address the applicability of quantum meruit to the facts of this case. *See Holland v. Sebunya*, 2000 ME 160, ¶ 9 n.6, 759 A.2d 205 ("The failure to mention an issue in the brief or at argument is construed as either an abandonment or a failure to preserve that issue.").

A.    Standing

[¶9]   We first address Brett's argument concerning Sunshine's standing to bring suit. As we have previously explained, a road commissioner has standing to sue pursuant to the Private Ways Act. *Tisdale v. Rawson*, 2003 ME 68, ¶ 16, 822 A.2d 1136. Brett is correct that the association's failure to incorporate may have left it without the capacity to sue in its own name. *See id.* ¶ 15. However, because 23 M.R.S.A. § 3102 (Supp. 2004) authorizes landowners to bring suit to enforce assessments, Sunshine has standing to sue in his individual capacity, as well as in his capacity as road commissioner.[6] *Id.* ¶ 16.

---

[6] We said in *Tisdale* that a landowner has standing "to bring suit to enforce an assessment *properly made* by an association against a landowner that is neglecting to pay." *Tisdale v. Rawson*, 2003 ME 68, ¶ 16, 822 A.2d 1136 (emphasis added) (quotation marks omitted). We did not hold, however, that the road commissioner lacked standing, even though we determined that certain of the assessments were invalid. *See id.* ¶¶ 16, 24. Thus, in a case such as this, where the issue is whether the assessments were properly made, we decline to require a showing that the assessments were proper as a prerequisite to establishing standing. *See Halfway House, Inc. v. City of Portland*, 670 A.2d 1377, 1379 (Me. 1996) ("Standing to sue means that the party, at the commencement of the litigation, has sufficient personal stake in the controversy to obtain judicial resolution of that controversy.").

6

B.      The Meaning of "Benefit" as used in the Private Ways Act

[¶10]  We next address Brett's argument that the association was ineligible to assess fees because it had not notified the owners of all benefited parcels of its initial meeting.   Determining whether the association is eligible to make assessments during the years in question requires interpretation of the Private Ways Act, and such interpretation of a statute is a question of law that we review de novo.  *Tisdale*, 2003 ME 68, ¶ 22, 822 A.2d 1136.

[¶11]  In interpreting an earlier version of the Private Ways Act, we held that landowners attempting to organize as a road association were required to follow the statute's mandatory warrant procedure, emphasizing the statute's use of the word "shall."  *Tisdale*, 2003 ME 68, ¶ 23, 822 A.2d 1136.  Based on that holding, we concluded that the association had no authority to assess fees for years during which it failed to follow the statutory procedures, that those assessments were invalid, and that the trial court therefore erred by awarding the road association its assessments for those years.  *Id.* ¶ 24.   Similarly, Sunshine will be unable to recover the association's assessments against Brett for any year in which the association failed to comply with the statutory requirements.

[¶12]  The version of the Private Ways Act in effect in 2004 provided that a road association could be formed "when 4 or more parcels of land are benefited by a private way or bridge as an appurtenant easement or by fee ownership of the way

or bridge" and required that notice of the initial meeting be sent "to the owners of all the parcels benefited by the way."[7] 23 M.R.S.A. § 3101 (Supp. 2004). Thus, in order to determine whether the association complied with the statute's mandates, we must determine the meaning of the phrase "benefited by the private road" as it is used in the statute.

[¶13] "Statutory interpretation is a matter of law." *Harrington v. State*, 2014 ME 88, ¶ 5, 96 A.3d 696 (quotation marks omitted). Thus, "[w]e review a trial court's interpretation of a statute for errors of law." *Daniels v. Tew Mac Aero Servs., Inc.*, 675 A.2d 984, 987 (Me. 1996). "The first step in statutory interpretation requires an examination of the plain meaning of the statutory language in the context of the whole statutory scheme." *State v. Stevens*, 2007 ME 5, ¶ 7, 912 A.2d 1229 (alterations omitted) (quotation marks omitted). In construing the plain meaning of the language, we seek to give effect to the legislative intent and construe the language "to avoid absurd, illogical, or inconsistent results." *Hickson v. Vescom Corp.*, 2014 ME 27, ¶ 15, 87 A.3d 704. Only if the statutory language is ambiguous—that is, reasonably susceptible to more than one interpretation—will we consider other indicia of legislative intent. *Griffin v. Griffin*, 2014 ME 70, ¶ 18, 92 A.3d 1144.

---

[7] Although the statute required that notice of the initial meeting be sent to the owners of all benefited parcels, it authorized the attendees of the initial meeting to determine "the manner of calling" future meetings. 23 M.R.S.A. § 3101 (Supp. 2004).

[¶14]  Section 3101 required the association to send notice of its initial meeting to owners of all the parcels benefited by the way either by an appurtenant easement over or fee ownership in the private way.  23 M.R.S.A. § 3101.  An appurtenant easement is "[a]n easement created to benefit another tract of land, the use of easement being incident to the ownership of that other tract."  *Black's Law Dictionary* 586 (9th ed. 2009).  A parcel benefits from a private road if the parcel includes an easement creating a right to use the road.  *Goudreau v. Pine Springs Rd. and Water, LLC*, 2012 ME 70, ¶ 14, 44 A.3d 315 (concluding that "lot owners' *parcels* [were] benefited by easements over . . . private roads" (emphasis added) because each owner had "the right to make use of the subdivision's private roads" and "[t]hat right is an easement" (quotation marks omitted)).  An appurtenant easement benefits land, not landowners.  *See, e.g.*, *Matteson v. Batchelder*, 2011 ME 134, ¶ 14, 32 A.3d 1059 ("An easement appurtenant is created to benefit the dominant tenement and runs with the land." (quotation marks omitted)).  It is in this context that the Legislature required that notice of the initial association meeting be sent to owners of "*all the parcels* benefited by the way."  23 M.R.S.A. § 3101 (emphasis added).

[¶15]  Construing the language in light of the entire statutory scheme, we conclude that any parcel—whether developed or undeveloped—that enjoys a right to use the private road is a benefited parcel.  Contrary to Sunshine's arguments, the

language of section 3101 provides no support for an interpretation that determines whether a parcel is "benefited" by a private way by examining the intensity of individual landowners' use of the way or the type of use they make of their properties.[8] Because the jury was not properly instructed on the law,[9] we must vacate the judgment. *Gould v. Bangor and Aroostook R.R.*, 292 A.2d 837, 843 (Me. 1972) (finding "manifest" prejudicial error where "instructions were so inadequate and misleading as to leave the jury without the guidance essential to its task").

C.     Substantial Compliance

[¶16] Sunshine contends that the association substantially complied with the Private Ways Act by consistently sending notice of meetings to those who owned homes on OCD. As we have previously explained, "certain requirements regarding the details of the notice (such as its verification and service) could be regarded as merely directory if such details are not of the very essence of giving notice and if the failure to strictly comply with them would not prejudice the rights

---

[8] Consideration of the type and frequency of use of the private road is entirely appropriate in determining a fair and equitable method of allocating the costs associated with maintaining the road. *See* 23 M.R.S. § 3101(5) (2013). This, however, does not dispense with the statutory requirement that notice of the initial meeting be sent to the owners of all benefited parcels.

[9] Here, the trial court encouraged the jury to consider both possible interpretations of the word "benefit" and explicitly left the issue of statutory interpretation to be resolved by the jury. We reiterate that questions of statutory interpretation are legal issues. *See, e.g.*, *Ashe v. Enterprise Rent-A-Car*, 2003 ME 147, ¶ 7, 838 A.2d 1157. Statutory interpretation is a task for the courts, not for juries.

of interested parties." *Ford Motor Co. v. Darling's*, 2014 ME 7, ¶ 29, 86 A.3d 35 (quotation marks omitted).

[¶17] Although we have shown some flexibility in interpreting statutory notice requirements, we typically do so in the context of construing notice provisions that affect the statute of limitations; "[s]pecific notice requirements are otherwise applied as they are written." *Id.* ¶ 30 n.9. Particularly in areas of law that are "uniquely statutory," "[i]n the absence of an express legislative command or a clear indication of legislative intention, we leave the parties where the [L]egislature left them." *American Mut. Ins. Cos. v. Murray*, 420 A.2d 251, 252 (Me. 1980). The unambiguous notice requirements of 23 M.R.S. § 3101(2) that identify who must receive notice cannot be characterized as merely directory; on the contrary, these basic requirements establish the very essence of notice necessary to form a road association. *See Ford Motor Co.*, 2014 ME 7, ¶ 29, 86 A.3d 35. We discern no basis for modifying these basic statutory requirements by applying the doctrine of substantial compliance. *See Bell v. Walton*, 2004 ME 146, ¶ 11, 861 A.2d 687 ("Mindful that [the statutory provision] is unambiguous . . . there is no apparent reason to engraft a judicially created doctrine . . . upon the statutory scheme.").

[¶18] Bearing these principles in mind, the record will only support a finding that the association failed to comply with the statutory requirement that it

send notice of the initial meeting to all owners of parcels benefited by the private road. As a result, the association was not eligible to make assessments for the years in question. We therefore remand the matter to the Superior Court for entry of judgment in favor of Brett.[10]

The entry is:

> Judgment vacated. Remanded to the Superior Court for entry of judgment for Brett.

---

ALEXANDER, J., with whom JABAR, J., joins, dissenting.

[¶19] I respectfully dissent. Stephen M. Brett owns a home on Ocean Circuit Drive in Cape Neddick. Ten years ago, he participated in and initially agreed to the private road association's arrangement for payment of the costs of maintaining and plowing the road. In the decade since the payment formula was established, Brett has refused to pay. The road association has now recovered a judgment of $6,000, a reduced amount, apparently set according to the statutory recovery limit for small claims judgments. *See* 14 M.R.S. § 7482 (2013).

[¶20] The Court vacates that judgment and orders entry of a judgment for

---

[10] We do not reach the merits of Brett's remaining arguments, nor do we consider Sunshine's request for attorney fees. *See* M.R. App. P. 13(f).

Brett because it concludes that, when the road association was organized, owners of undeveloped lots were given insufficient notice of the organizational meeting. Were Brett the owner of an undeveloped lot, subject to no maintenance or plowing fee assessments, this certainly would be a valid basis to vacate the judgment. But Brett owns a developed lot. He had notice of and attended the organizational meeting. For ten years, Brett and his property have benefitted from snowplowing and road maintenance paid for by the other developed lot owners.

[¶21] Any lack of notice to undeveloped lot owners has not prejudiced Brett in any way. The Court's opinion acknowledges that the payment arrangement, requiring payment only from owners of developed lots, does not violate the law. By now, Brett should be estopped from complaining about any procedural defect in establishing the payment arrangement under which the owners of developed lots, except Brett, have supported road maintenance and snow plowing for ten years.

[¶22] As any lack of notice to owners of undeveloped lots has not prejudiced Brett or increased his payment obligation in any way, that lack of notice does not support vacating the judgment against Brett and, apparently, barring any recovery on claims for quantum meruit or unjust enrichment. *See Paffhausen v. Balano*, 1998 ME 47, ¶¶ 6-9, 708 A.2d 269 (describing the elements of and distinguishing quantum meruit and unjust enrichment claims, noting that when "a party to whom services are rendered knows it and permits it and accepts the

benefit, he is bound to pay a reasonable compensation therefor" (quotation marks omitted)).[11]

[¶23] We must resolve two issues in the appellant's favor to vacate the trial court's judgment obtained after a jury trial: first, that the trial court committed error, and second, that the appellant was prejudiced by the error. *See* M.R. Civ. P. 61; M.R. Crim. P. 52(a); M.R. Evid. 103(a); *see also In re Joshua B.*, 2001 ME 115, ¶ 10, 776 A.2d 1240. Prejudice sufficient to justify reversal is found when a "substantial right" of the objecting party is affected by the error. *See State v. Burdick*, 2001 ME 143, ¶ 29, 782 A.2d 319; *Joshua B.*, 2001 ME 115, ¶ 10, 776 A.2d 1240; *State v. Phillipo*, 623 A.2d 1265, 1268 (Me. 1993).

[¶24] Here, Brett has demonstrated no prejudice from the alleged error of the trial court, let alone impact of a substantial right. In a few instances, prejudice, usually by an erroneous deprivation of certain constitutional rights, may be demonstrated without any showing of harm. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 147-50 (2006). Such errors are called "structural errors." *See id.* at ¶ 50. No constitutional right is demonstrated to be violated here by the alleged failure to properly notify the owners of five of the sixteen lots on the road. With

---

[11] If, as the Court concludes, the original organization of the road association was invalid, then the District Court small claims judgment could have been treated, on Superior Court review, as an unjust enrichment judgment. That judgment would have been subject to review in the Superior Court on questions of law only, M.R.S.C.P. 11(d)(2), as unjust enrichment is an equitable claim on which there is no jury trial right. *Bowden v. Grindel*, 651 A.2d 347, 350 (Me. 1994).

no prejudice to the appellant demonstrated from the alleged error that may have occurred ten years ago, I would affirm the trial court's judgment.

_____

**On the briefs:**

Stephen M. Brett, pro se appellant

Gregory J. Orso, Esq., Orso Law, P.A., York, for appellee Victor Sunshine

York County Superior Court docket number AP-11-36
FOR CLERK REFERENCE ONLY