MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2020 ME 19
Docket:       BCD-19-217
Argued:       January 8, 2020
Decided:      January 30, 2020

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.


ATTORNEY GENERAL

v.

JOHN J. SANFORD et al.[1]


ALEXANDER, J.

[¶1]  Seal Cove Auto Museum appeals from a judgment of the Business and Consumer Docket (*Murphy, J.*) approving a consent decree negotiated between the Attorney General and John Sanford and John Higgins, as trustees of the Richard C. Paine, Jr., Automobile Collection Charitable Trust (the Trustees).

[¶2]  Seal Cove initiated this action in 2016 by filing a complaint alleging that the Trustees had committed various breaches of their trustee obligations. As required by statute, Seal Cove's complaint joined the Attorney General as a

---

[1]  The case caption is the caption appearing in the record of the Business and Consumer Docket. *See Attorney General v. Sanford*, BCD-CV-18-19 (Bus. & Consumer Ct. May 10, 2019, *Murphy, J.*).  Seal Cove Auto Museum—the appellant in this appeal—was previously dismissed as a party to this case by an order of the Superior Court (Cumberland County, *L. Walker, J.*).  *See Seal Cove Auto Museum v. Spinnaker Trust*, No. CV-2016-333, 2017 ME Super. LEXIS 105 (May 3, 2017).

party-in-interest. *See* 5 M.R.S. § 194(4) (2018). In 2017, on motion by the Trustees, Seal Cove's complaint was dismissed for lack of standing by the Superior Court (Cumberland County, *L. Walker, J.*). That ruling is the primary focus of Seal Cove's appeal. We conclude that the court erred in dismissing Seal Cove's complaint. Accordingly, we vacate the judgment.

## I. CASE HISTORY

### A. Facts

[¶3] The case history is drawn from Seal Cove's complaint originally filed in the Superior Court, the court's 2017 order dismissing the complaint, and the 2019 consent decree.

[¶4] Richard Paine Jr. established Seal Cove in 1963 and the Richard C. Paine, Jr., Automobile Collection Charitable Trust (the Trust) in 1986. The Trust and Seal Cove were established to maintain and display Paine's large collection of antique automobiles. Following Paine's death in 2007, the Trust acquired most of Paine's automobiles and an endowment to support maintenance and display of the automobile collection. Sanford and Higgins presently serve as trustees of the Trust.

[¶5] The Declaration of Trust sets forth the Trust's charitable purpose. In relevant part, it provides:

All or any part of the net income and principal may be paid for the charitable purposes of 1) providing educational and scientific study of ant[iq]ue automobiles, whether owned by the trust or any other charitable organization, and other methods of transportation, 2) providing for the display to the public of antique automobiles, whether owned by the trust or any other charitable organization, and 3) maintaining in suitable condition for public display and study any antique automobiles owned by the trust or any other charitable organization.

In furtherance of the foregoing purposes the Trustee may, without limitation, sell such automobiles as he from time to time deems necessary or advisable, whether to provide a suitable endowment to maintain the Collection or to permit the continued display of antique automobiles by Seal Cove Auto Museum or by any other museum[;] . . . loan all or any part of the Collection to museums, including without limitation Seal Cove Auto Museum, or other charitable organizations . . . for public display or study; permit access to the Collection for educational purposes by scholars or students; and generally do all such acts as may be necessary or appropriate to educate the public with respect to antique automobiles and to make the Collection available for public viewing.

The Declaration of Trust expressly permits, but does not require, the Trustees to make distributions of Trust income or principal to Seal Cove.

[¶6]  The Trust's collection of antique automobiles has been displayed at Seal Cove for many years.  In 2008 and 2014, Seal Cove and the Trust entered into contracts that allowed the continued display of the Trust's collection at Seal

4

Cove.[2]  Pursuant to these contracts, the Trust pays Seal Cove at least $200,000 per year to support the museum's operations.  The 2014 contract represents an extension of the 2008 contract, which grants Seal Cove "a right to renew for succeeding five year periods in perpetuity" if Seal Cove meets requirements related to museum standards.

B.     Procedural History

[¶7]   Seal Cove's August 2016 complaint alleged, primarily, that the Trustees had received excessive fees for their services and had engaged in self-dealing.  For relief, Seal Cove sought, among other things, a declaratory judgment that it is a "qualified beneficiary" of the Trust pursuant to the Maine Uniform Trust Code (MUTC), 18-B M.R.S. §§ 101-1104 (2018), and injunctions (1) barring the Trustees from receiving excessive fees and from engaging in self-dealing and (2) requiring the Trustees to repay excessive fees they had already received from the Trust.  The Attorney General filed a pleading that made similar allegations against the Trustees and requested similar relief. *See* 5 M.R.S. § 194(2) (2018) (giving the Attorney General authority to enforce charitable trusts).

---

[2] The 2008 contract was entered into following a 2008 consent agreement resolving a charitable trust action initiated by the Attorney General and involving John Sanford, then the only trustee, and Seal Cove as parties.

[¶8] The Trustees filed a motion to dismiss Seal Cove's complaint, arguing that Seal Cove lacked standing because it is not a qualified beneficiary of the Trust. The court granted the motion in May 2017. The Attorney General then sought leave to file an amended complaint against the Trustees. The Trustees waived objection to this motion, and the case proceeded with the Attorney General as plaintiff. In the amended complaint, the Attorney General alleged that the Trustees engaged in self-dealing and paid themselves excessive fees. The amended complaint sought substantially the same relief as had been sought by Seal Cove in its original complaint.

[¶9] The case was transferred to the Business and Consumer Docket in April 2018. In May 2019, the court (*Murphy, J.*) approved a consent decree that limited the Trustees' yearly pay to $62,500 plus $5,000 in travel costs and prohibited the Trustees from engaging in self-dealing without the Attorney General's consent. Seal Cove timely appealed the judgment approving the consent decree, arguing that the court (*L. Walker, J.*) had erred in dismissing its complaint for lack of standing. *See* M.R. App. P. 2B(c)(1). Seal Cove argues on appeal that the judgment should be vacated and the case remanded so that it can seek the relief it sought in its initial complaint.

## II. LEGAL ANALYSIS

[¶10] Seal Cove contends that it has standing because it possesses the rights of a "qualified beneficiary" of the Trust, 18-B M.R.S. §§ 103(12), 110(1), and because the MUTC grants standing to qualified beneficiaries to assert a breach of trust, *see* 18-B M.R.S.A. § 1001 Unif. Trust Code cmt. (2012).[3]

[¶11] A qualified beneficiary of a trust is, as relevant here, "a living beneficiary who on the date the beneficiary's qualification is determined . . . [i]s a distributee or permissible distributee of trust income or principal." 18-B M.R.S. § 103(12). Seal Cove is not a qualified beneficiary under this definition because it is not "living," *id.*, and because charitable trusts do not have "beneficiaries" (qualified or otherwise) as that term is defined in the MUTC, *see* 18-B M.R.S.A. § 103 Unif. Trust Code cmt. (2012). However, 18-B M.R.S. § 110(1)(A) provides that

> [a] charitable organization expressly designated to receive distributions under the terms of a charitable trust *has the rights of a qualified beneficiary* under this Code if the charitable organization, on the date the charitable organization's qualification is being determined . . . [i]s a distributee or permissible distributee of trust income or principal.

---

[3] Because we conclude that Seal Cove has standing on this basis, we do not address its alternative argument that it has "special interest" standing to enforce a charitable trust. *See Fitzgerald v. Baxter State Park Auth.*, 385 A.2d 189, 196-97 (Me. 1978).

(Emphasis added.)

[¶12]   A charitable organization possessing the rights of a qualified beneficiary has standing to assert a claim of breach of trust, including a claim that the trustees received unreasonable fees.  *See* 18-B M.R.S. § 708(3); 18-B M.R.S.A. § 1001 Unif. Trust Code cmt.  Seal Cove asserts that it has standing because (1) it is "expressly designated to receive distributions under the terms of" the Trust and (2) it is presently a "distributee or permissible distributee" of the Trust.  18-B M.R.S. § 110(1)(A).

[¶13]  The Declaration of Trust authorizes the Trustees to pay "[a]ll or any part of the net income and principal" for the charitable purpose of displaying the Trust's automobile collection and explicitly names Seal Cove as a possible recipient.  Accordingly, Seal Cove is a permissible distributee.[4]

[¶14]  We now consider whether Seal Cove is "expressly designated to receive distributions under the terms of" the Trust.  *Id.* § 110(1).  In particular, we must determine whether a charitable organization satisfies this requirement by showing that it is expressly *permitted* to receive distributions

---

[4] As the result of the 2014 contract executed by Seal Cove and the Trustees, Seal Cove has the right to receive at least $200,000 annually as a distributee, and to remain in perpetuity a mandatory distributee of the Trust as long as it meets certain standards.  However, that right exists outside of the terms of the Trust, and we do not consider that right in determining Seal Cove's status as a qualified beneficiary.

from the trust or whether a charitable organization must show that it is expressly *mandated* to receive distributions from the trust. Because the Declaration of Trust expressly authorizes the Trustees to make distributions to Seal Cove, but does not require them to do so, the resolution of this appeal turns on the meaning of the word "designated."

[¶15] In statutory interpretation, we first examine "the plain meaning of the statutory language in the context of the whole statutory scheme." *Sunshine v. Brett*, 2014 ME 146, ¶ 13, 106 A.3d 1123. "Only if the statutory language is ambiguous—that is, reasonably susceptible to more than one interpretation—will we consider other indicia of legislative intent." *Id.*

[¶16] The meaning of 18-B M.R.S. § 110(1) is established when it is compared to section 103(12), which articulates the definition of a qualified beneficiary of a private trust. Title 18-B M.R.S. § 103(12) states:

> "Qualified beneficiary" means a living beneficiary who on the date the beneficiary's qualification is being determined:
>
> > **A.** Is a distributee or permissible distributee of trust income or principal;
> >
> > **B.** Would be a distributee or permissible distributee of trust income or principal if the interests of the distributees described in paragraph A terminated on that date, but the termination of those interests would not cause the trust to terminate; or

**C.** Would be a distributee or permissible distributee of trust income or principal if the trust terminated on that date.

[¶17]  Title 18-B M.R.S. § 110(1) similarly provides:

A charitable organization expressly designated to receive distributions under the terms of a charitable trust has the rights of a qualified beneficiary under this Code if the charitable organization, on the date the charitable organization's qualification is being determined:

> **A.** Is a distributee or permissible distributee of trust income or principal;
>
> **B.** Would be a distributee or a permissible distributee of trust income or principal upon the termination of the interests of other distributees or permissible distributees then receiving or eligible to receive distributions; or
>
> **C.** Would be a distributee or permissible distributee of trust income or principal if the trust terminated on that date.

[¶18]  The Legislature's use of nearly identical language in sections 103(12)(A)-(C) and 110(1)(A)-(C) demonstrates its intent that a charitable organization may assert the rights of a qualified beneficiary only if it has a beneficial interest in a charitable trust *equal* to that of a qualified beneficiary of a private trust.  *Cf. Great N. Nekoosa Corp. v. State Tax Assessor*, 675 A.2d 963, 967-68 (Me. 1996) (Clifford, J., dissenting) (citing *Sullivan v. Stroop*, 496 U.S. 478, 484 (1990)) ("Identical words in different parts of the same statute are presumed to have the same meaning." (emphasis omitted)).  Thus, a charitable

10

organization does not need to show that the terms of the trust make it a mandatory distributee in order to satisfy the "expressly designated" requirement.

[¶19] Our reading of section 110(1) comports with the canon of statutory interpretation that "[w]ords in a statute . . . be given meaning and not treated as meaningless and superfluous." *Wong v. Hawk*, 2012 ME 125, ¶ 8, 55 A.3d 425. Reading the word "designated" as "mandated" would eviscerate the phrase "or permissible distributee" as it is used in section 110(1)(A) because a charitable organization that is expressly mandated to receive distributions under the terms of the trust would not be a "permissible distributee," but simply a "distributee." We will not interpret a statute in such a way as to render some words meaningless. *See id.*

[¶20] The Trustees argue that Uniform Trust Code commentary to section 110 supports their interpretation of the word "designated." That commentary states that to have the rights of a qualified beneficiary, a charitable organization "must be named in the terms of the trust and must be designated to receive distributions," and therefore "excluded are organizations who may receive distributions only in the trustee's discretion . . . ." 18-B M.R.S.A. § 110

Unif. Trust Code cmt. (2012). The Trustees argue that this shows that the word "designated" must be read to mean "mandated."

[¶21] This argument fails because the plain language of section 110(1), as adopted by the Legislature, unambiguously provides a different directive. The language used by the Legislature gives Seal Cove the rights of a qualified beneficiary. The commentary to the UTC is not part of the statute and cannot create an ambiguity where none exists. *See Sunshine*, 2014 ME 146, ¶ 13, 106 A.3d 1123.

[¶22] Because Seal Cove possesses the rights of a qualified beneficiary, the court erred in 2017 when it dismissed Seal Cove's complaint for lack of standing. *See* 18-B M.R.S. §§ 708(3), 1001. Accordingly, we vacate the judgment and remand for Seal Cove to pursue the relief it sought in its original complaint.

The entry is:

12

> Judgment vacated. Remanded for proceedings consistent with this opinion.

---

Timothy J. Bryant, Esq. (orally), Preti, Flaherty, Beliveau & Pachios, LLP, Portland, for appellant Seal Cove Auto Museum

George T. Dilworth, Esq., and Amy K. Olfene, Esq., Drummond Woodsum, Portland, for appellees John J. Sanford and John P. M. Higgins as trustees of the Richard C. Paine, Jr. Automobile Collection Charitable Trust

James M. Bowie, Esq., Thompson, Bowie & Hatch, Portland, for appellee John J. Sanford

Gerald F. Petruccelli, Esq. (orally), Petruccelli, Martin & Haddow, Portland, for appellee John Higgins

Business and Consumer Docket docket number CV-2018-19
FOR CLERK REFERENCE ONLY